OPINION
{¶ 1} Defendant-appellant, Johnny Savage, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of one count of aggravated robbery with a firearm specification, three counts of kidnapping, each with a firearm specification, and one count of carrying a concealed weapon.
 {¶ 2} According to the state's evidence, on May 22, 2001, at approximately two o'clock in the afternoon, an African-American male, later identified as defendant, entered a freestanding Subway restaurant on Lockbourne Road, near the intersection of Lockbourne and Smith Road, through an unlocked rear door. Defendant wore a "hoodie," a blue hooded sweatshirt that was pulled over his head, and he brandished a silver pistol. He also had "burns on his hands" or scarring from burns, that were described as "whitish, going down the sides" of his right hand. (Tr. 303, 321.)
 {¶ 3} After entering the restaurant, defendant inquired where money was located and ordered Kavan Miller, who at the time was the assistant manager of the restaurant, to get the money for him. Defendant ordered two other employees to go near the freezer. Miller, who had just completed a sale, attempted to comply with the robber's demand. However, after apparently growing impatient, defendant grabbed the remainder of the money that Miller had not already provided to him and exited through the rear door. A short time later, however, restaurant employees observed defendant in front of the restaurant; defendant then proceeded east on Smith Road.
 {¶ 4} Miller pushed a "panic button," called restaurant supervisory personnel to inform them of the robbery and, in accordance with restaurant policy and procedure, closed the restaurant. Police arrived at the scene shortly after Miller pushed the panic button. Miller's district supervisor also arrived at the scene; the supervisor found no bills in the cash register and determined $238.06 was stolen in the robbery.
 {¶ 5} After hearing the radio dispatch about the robbery, a plain-clothes detective drove to the area where the robber had fled and searched for the suspect. After speaking with an employee to determine the exact direction the robber fled, the detective resumed his search and observed a small vehicle, pulled over to the side of the road, with a male and a female occupant. The male occupant, an African-American, exited the vehicle and began whistling toward an apartment; the behavior caught the detective's attention. Receiving no response to his whistling, the male occupant then entered the apartment building. After a short time, he emerged, and re-entered the vehicle. Shortly thereafter another African-American male, who carried a light blue hooded sweatshirt, exited the apartment building, entered the vehicle, and sat in the back seat.
 {¶ 6} Because the man who carried the blue hooded sweatshirt fit the description of the robbery suspect and was observed leaving the area from where witnesses stated the robbery suspect had fled, the detective followed the vehicle and requested uniformed police officers to stop the vehicle and investigate. The vehicle subsequently stopped at a gas station. The female occupant left the vehicle to enter the building. Police cruisers then pulled into the gas station and stopped next to the vehicle. Police observed defendant and a baby in the back seat; defendant had a blue hooded sweatshirt covering his hands. Police discovered defendant had scarred hands, and ordered him to exit the vehicle. During a search of defendant, defendant admitted to being armed. Police recovered a concealed nickel-plated automatic handgun and $237 from defendant; they subsequently arrested him.
 {¶ 7} During the robbery, Miller was not able to get a good look at the robber's face because of the hooded sweatshirt and because Miller's attention was focused on the robber's weapon. However, at trial, Miller identified defendant's hands as those of the robber.
 {¶ 8} According to defendant's evidence, on May 22, 2001, at approximately 1:45 p.m., defendant called Eric Jackson, a relative, to ask Jackson for a ride. Jackson agreed to pick up defendant at an apartment on the south side of Columbus. At approximately 2:00 p.m., Jackson, Jackson's girlfriend and Jackson's baby arrived at the designated apartment. Jackson whistled for defendant; after receiving no response, Jackson went into the apartment building where he found defendant. After defendant introduced Jackson to some of his friends, Jackson and defendant left the apartment, entered Jackson's girlfriend's vehicle, and drove away. According to Jackson and his girlfriend, at the time defendant left the apartment defendant did not have a blue hooded sweatshirt with him. After leaving the apartment, Jackson stopped at a gas station where police approached the vehicle and later apprehended defendant. A private investigator testified at trial that in interviews with the private investigator, Miller indicated the gun used in the robbery was dark gray or black, thereby impeaching Miller's trial testimony that the weapon used in the robbery was silver.
 {¶ 9} By indictment filed June 1, 2001, defendant was charged with one count of aggravated robbery, two counts of robbery, three counts of kidnapping, three counts of abduction, each with two firearm specifications, and one count of carrying a concealed weapon. Upon agreement of the state, the trial court dismissed two counts of robbery and three counts of abduction, and dismissed some firearm specifications in the original indictment. The trial court also suppressed a "show-up" identification that police conducted following the robbery.
 {¶ 10} Pursuant to a jury trial, the jury found defendant guilty of aggravated robbery with a firearm specification, three counts of kidnapping, each with a firearm specification, and one count of carrying a concealed weapon. The trial court sentenced defendant to a total of 21 years of incarceration. Defendant timely appeals, assigning three errors:
 {¶ 11} "ASSIGNMENT OF ERROR NO. 1:
 {¶ 12} "THE TRIAL COURT ERRED WHEN IT REQUIRED THE DEFENDANT TO DISPLAY HIS HANDS TO A WITNESS IN THE COURTROOM, IN VIOLATION OF HIS FIFTH AMENDMENT CONSTITUTIONAL RIGHT.
 {¶ 13} "ASSIGNMENT OF ERROR NO. 2:
 {¶ 14} "THE TRIAL COURT ERRS WHERE, FOR SENTENCING PURPOSES, IT FAILS TO MERGE A KIDNAPPING CHARGE WITH AN AGGRAVATED ROBBERY CHARGE, WHERE BOTH CHARGES ARE ALLIED OFFENSES OF SIMILAR IMPORT.
 {¶ 15} "ASSIGNMENT OF ERROR NO. 3:
 {¶ 16} "A TRIAL COURT ERRS WHEN IT PERMITS THE PROSECUTION TO CALL A WITNESS TO TESTIFY WHERE THAT WITNESS IS NOT ON A WITNESS LIST AND THE DEFENDANT HAS NO ADVANCED KNOWLEDGE OF THE TESTIMONY."
 {¶ 17} In his first assignment of error, defendant contends the trial court violated his Fifth Amendment right against self-incrimination when it required defendant to display his hands to a witness in the courtroom.
 {¶ 18} "The Fifth Amendment privilege against self-incrimination `protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature.' " State v. Hairston (1990), 67 Ohio App.3d 341,347, quoting Schmerber v. California (1966), 384 U.S. 757, 761,86 S.Ct. 1826. See Gilbert v. California (1967), 388 U.S. 263, 266,87 S.Ct. 1951, quoting Schmerber at 763-764 ("The privilege reaches only compulsion of `an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example compliance with a subpoena to produce one's papers,' and not `compulsion which makes a suspect or accused the source of "real or physical evidence" ' "). See, also, State v. Anthony (La. 1976),332 So.2d 214, 215 ("The privilege does not mandate an exclusion of the accused's body as evidence when it may be material"). (Citations omitted.) Accord State v. Gatton (1938), 60 Ohio App. 192 (under the Ohio Constitution, privilege against self-incrimination applies only to disclosure by oral or written utterance). Accordingly, defendant'sFifth Amendment rights were not violated in the trial court's requiring defendant to show his hands to the jury.
 {¶ 19} Defendant nonetheless cites to State v. Naylor (1980),70 Ohio App.2d 233. In Naylor, the court held that where, for the express purpose of allowing the victim of the crime to arrive at an in-court identification of the speaker, a defendant is required to repeat, over objection, in the presence of the jury words and sentences that one of the perpetrators of a crime used during the crime, the defendant's rights under both the Fifth and Fourteenth Amendments to the United States Constitution were violated. Id. at 236-237.
 {¶ 20} Naylor, however, is factually distinguishable. In Naylor, the court concluded the order that defendant speak was too similar to giving testimony. Here, by contrast, defendant was not required to reiterate words. Instead, defendant was required to display his hands to a witness in the courtroom. As noted in Urquhart v. Lockhart (E.D.Ark. 1983), 557 F. Supp. 1334, 1339, affirmed (C.A.8, 1984), 726 F.2d 1316, "[i]t has long been established that the privilege against self-incrimination does not encompass the compulsion to * * * assume a stance, to walk, or to make a particular gesture." (Citations omitted.) See, also, State v. Ashford (Dec. 11, 1986), Cuyahoga App. No. 51366 (holding right against self-incrimination was not violated when defendant's fingerprints were taken in the presence of the jury); Urquhart, supra (finding a trial court's order to remove clothing and display a scar to the jury did not violate right against self-incrimination). Consequently, defendant's contention under Naylor is unpersuasive. The trial court did not violate defendant's Fifth Amendment right against self-incrimination when it required defendant to display his hands, a source of real or physical evidence, to a witness in the courtroom where identification of defendant's hands was material and relevant.
 {¶ 21} In his first assignment of error, defendant also contends the in-court identification of him was highly prejudicial, unreliable and unnecessarily suggestive of defendant's guilt, given that the trial court suppressed the pretrial identification arising from a show-up following the crime. In Manson v. Brathwaite (1977), 432 U.S. 98, 114,97 S.Ct. 2243, the United States Supreme Court concluded that "reliability is the linchpin" in determining the admissibility of identification testimony. "The factors to be considered are set out in [Neil v. Biggers (1972),409 U.S. 188, 199-200, 93 S.Ct. 375]. These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself." Id.
 {¶ 22} In this case, at a pretrial suppression hearing, Kavan Miller testified that, following defendant's arrest, police informed Miller "they had found the guy and to get in the cruiser and go down and take a look." (Tr. 91.) Police transported Miller and another employee, Chris Pringle, to the gas station for a show-up identification of defendant. When Miller arrived at the location where defendant was detained, Miller looked into the police wagon. Miller could not see defendant's hands which were handcuffed behind defendant, Miller had only a side view of defendant's face, and Miller had some difficulty remembering whether defendant was wearing the hooded sweatshirt at the show-up. On cross-examination, defense counsel inquired if the police comment that defendant had already been positively identified was quite suggestive to Miller. In response, Miller testified, "[w]ell, actually, I didn't really look at his face too much. I was looking at the pistol, for real." (Tr. 94.) Moreover, in response to the trial court's inquiry, Miller testified that at the time of the show-up, he had no discussions with either of the other two restaurant employees who also were brought to the show-up to identify defendant.
 {¶ 23} On redirect examination, Miller also testified as follows:
 {¶ 24} "Q. When you gave the description to the officers of the blue jacket with the hood, and the burned hands was that based on your observations of the individual?
 {¶ 25} "A. Yes.
 {¶ 26} "* * *
 {¶ 27} "Q. Of the robbery?
 {¶ 28} "A. Yes.
 {¶ 29} "Q. It was not based on anything that occurred subsequent to it?
 {¶ 30} "A. No." (Tr. 102.)
 {¶ 31} Subsequently, at trial, Miller testified the photograph of the blue hooded sweatshirt seemed to match the blue hooded sweatshirt the robber wore, and the gun presented at trial appeared to be the gun or was similar to the robber's gun. Miller also explained his attention at the time of the robbery was focused on the robber's pistol and he therefore did not get a good look at the robber's face. Lastly, prior to viewing defendant's hands in court, Miller testified the robber's hands were "burnt. Seemed like it was burnt at the top. It was like a whitish, going down the sides." (Tr. 303.) Later, after viewing defendant's hands in court, Miller identified defendant's hands, in particular defendant's right hand, as those of the robber.
 {¶ 32} Under these circumstances, irreparable misidentification is not substantially likely. Miller stated the police comments prior to the show-up were not unduly suggestive, and at the time of the show-up he had no discussions with the other employees concerning the identification of defendant. Because he did not see defendant's face during the robbery, he was not able to positively identify defendant at the show-up. Moreover, his only basis for identifying defendant was defendant's hands. They were not visible at the show-up and, thus, the pretrial show-up could not influence Miller's identifying defendant at trial through a view of defendant's hands.
 {¶ 33} Significantly, at both the pretrial suppression hearing and trial, Miller consistently stated his attention was focused on defendant's weapon. Therefore, at the time of the robbery, Miller had an opportunity to observe defendant's hands while defendant held the weapon used in the robbery and grabbed the remaining cash from the register. Admittedly, Pringle's statement at the show-up that defendant was definitely the robber may have had some corrupting effect. Nonetheless, because Miller's identification of defendant's hands was based on his personal observations of defendant's hands independent of events at the show-up, we cannot conclude Pringle's comment tainted Miller's in-court identification of defendant's hands so as to render Miller's in-court identification to be unreliable. See, e.g., Gilbert v. California at 272 ("The admission of the in-court identifications without first determining that they were not tainted by the illegal lineup but were of independent origin was constitutional error"). See, also, Neil v. Biggers (1972),409 U.S. 188, at 198, 93 S.Ct. 375, quoting Simmons v. United States (1968), 390 U.S. 377, 384, 88 S.Ct. 967 ("It is, first of all, apparent that the primary evil to be avoided is `a very substantial likelihood of irreparable misidentification' "). As noted by Manson, "[s]hort of [a very substantial likelihood of irreparable misidentification], such evidence is for the jury to weigh. We are content to rely upon the good sense and judgment of the American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature." Id. at 116, fn. 14.
 {¶ 34} Furthermore, unlike Naylor in which the jury apparently had no other basis for identification except the in-court voice procedure, here the jury had other identification evidence, such as the photograph of the blue hooded sweatshirt, the firearm recovered from defendant, and cash recovered from defendant that closely matched the amount taken from the restaurant. The evidence, if believed, constituted sufficient corroborating evidence to neutralize the allegedly suggestive nature of the in-court identification. See, e.g., State v. Winters (June 7, 1985), Lucas App. No. L-84-151. Accordingly, we overrule defendant's first assignment of error.
 {¶ 35} In his second assignment of error, defendant contends his conviction for kidnapping and robbery as it relates to Kavan Miller was in error because the offenses are allied offenses of similar import. R.C. 2941.25 governs allied offenses, and provides:
 {¶ 36} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 37} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 38} "Under an R.C. 2941.25(A) analysis, the statutorily defined elements of offenses that are claimed to be of similar import are compared in the abstract." (Emphasis sic.) State v. Rance (1999),85 Ohio St.3d 632, paragraph one of the syllabus, overruling Newark v. Vazirani (1990), 48 Ohio St.3d 81. "Courts should assess, by aligning the elements of each crime in the abstract, whether the statutory elements of the crimes `correspond to such a degree that the commission of one crime will result in the commission of the other.' * * * And if the elements do so correspond, the defendant may not be convicted of both unless the court finds that the defendant committed the crimes separately or with separate animus." Rance at 638-639. (Citation omitted.)
 {¶ 39} R.C. 2911.01(A), aggravated robbery, provides that "[n]o person, in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense, shall do any of the following: (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it; (2) Have a dangerous ordnance on or about the offender's person or under the offender's control; (3) Inflict, or attempt to inflict, serious physical harm to another."
 {¶ 40} Under R.C. 2905.01(A), kidnapping, "[n]o person, by force, threat or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: * * * (2) To facilitate the commission of any felony or flight thereafter[.]" Under R.C. 2905.01(B), "[n]o person, by force, threat, or deception * * * shall knowingly do any of the following, under circumstances that create a substantial risk of serious physical harm to the victim * * * (1) Remove another from the place where the other person is found; (2) Restrain another of his liberty[.]"
 {¶ 41} Aggravated robbery under R.C. 2911.01 requires having a deadly weapon on or about the offender's person while attempting, committing or fleeing immediately after a theft offense; kidnapping does not. By contrast, kidnapping under R.C. 2905.01 requires some restraint of liberty by the offender; by its statutory elements, aggravated robbery does not. Consequently, under Rance, the commission of one offense purportedly can occur without the commission of the other and, therefore, these offenses are not allied offenses of similar import. State v. Latson (Nov. 1, 2001), Cuyahoga App. No. 79093, appeal not allowed (2002),94 Ohio St.3d 1488. See, also, State v. Dejanette, Hamilton App. No. C-010693, 2002-Ohio-4802, at ¶ 11-13; State v. Lee (Oct. 25, 2000), Summit App. No. 19750.
 {¶ 42} However, subsequent to Rance, in State v. Fears (1999),86 Ohio St.3d 329, 344, certiorari denied (2000), 529 U.S. 1039,120 S.Ct. 1535, the Ohio Supreme Court, in concluding that a kidnapping specification should have merged with an aggravated robbery specification in a capital case, reaffirmed the merger doctrine it announced in State v. Jenkins (1984), 15 Ohio St.3d 164, certiorari denied (1985),472 U.S. 1032, 105 S.Ct. 3514, rehearing denied (1985), 473 U.S. 927,106 S.Ct. 19, when it noted:
 {¶ 43} "In Jenkins at 198, 15 OBR at 340, 473 N.E.2d 264 at 295, fn. 29, we stated that `implicit within every robbery (and aggravated robbery) is a kidnapping.' Therefore, a kidnapping specification merges with an aggravated robbery specification unless the offenses were committed with a separate animus. R.C. 2941.25(B). Thus, when a kidnapping is committed during another crime, there exists no separate animus where the restraint or movement of the victim is merely incidental to the underlying crime. State v. Logan (1979), 60 Ohio St.2d 126, 14 O.O.3d 373, 397 N.E.2d 1345, syllabus. However, where the restraint is prolonged, the confinement is secretive, or the movement is substantial, there exists a separate animus as to each offense. Id." See, also, Jenkins at 198, quoting Logan, supra, at 135 ("As the Logan court recognized, the critical consideration `is whether the restraint or movement of the victim is merely incidental to a separate underlying crime or, instead, whether it has a significance independent of the other offense' ").
 {¶ 44} Here, at trial, Miller testified he first noticed defendant when he turned around after he finished ringing up a customer at the cash register. (Tr. 245.) According to Miller, defendant, who had a weapon, stood to the left of him and made no other demands of him except to "get the money." (Tr. 249.) After defendant instructed Miller to hurry, defendant reached into the register, grabbed the remainder of the money and fled. As Jenkins instructs, "the critical consideration `is whether the restraint or movement of the victim is merely incidental to a separate underlying crime or, instead, whether it has a significance independent of the other offense.' " Jenkins at 198, quoting Logan at 135.
 {¶ 45} On the facts of this case, any restraint or movement of the defendant was merely incidental to the underlying crime of aggravated robbery. Therefore, under Fears and Jenkins, defendant did not act with a separate animus when he restrained Miller's liberty during the course of the aggravated robbery. The kidnapping conviction concerning Kavan Miller was impermissibly cumulative. But, see, State v. Lee (Oct. 8, 1999), Hancock App. No. 5-99-20, appeal not allowed (2000), 87 Ohio St.3d 1494. Because defendant's kidnapping conviction concerning Kavan Miller and the aggravated robbery conviction should have merged, we sustain defendant's second assignment of error.
 {¶ 46} In his third assignment of error, defendant contends the trial court erred by permitting the prosecution to call a witness not listed on the prosecution's pretrial disclosure list.
 {¶ 47} Crim.R. 16(E)(3) provides remedies that a trial court may apply in the event a party fails to provide discovery information as required by the rule. See Crim.R. 16(E)(3); State v. Parson (1983),6 Ohio St.3d 442, 445. "It is readily apparent that under this rule, the trial court is vested with a certain amount of discretion in determining the sanction to be imposed for a party's nondisclosure of discoverable material. The court is not bound to exclude such material at trial although it may do so at its option. Alternatively, the court may order the noncomplying party to disclose the material, grant a continuance in the case or make such other order as it deems just under the circumstances. Accordingly, our inquiry is limited to a determination of whether the trial court's action * * * constituted an abuse of discretion." Id. at 445. See, also, State v. Adams (1980),62 Ohio St.2d 151, 157-158 ("abuse of discretion" implies a court's attitude is unreasonable, arbitrary or unconscionable). Moreover, "[a] trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery." Lakewood v. Papadelis (1987), 32 Ohio St.3d 1, paragraph two of the syllabus. "The purpose of discovery rules is to prevent surprise and the secreting of evidence favorable to one party. The overall purpose is to produce a fair trial." Id. at 3.
 {¶ 48} Here, the prosecution apparently assumed one police officer counted the cash recovered from defendant at the time of his arrest because the exact amount of money was written in his report. The prosecution learned at trial that the officer did not actually count the money. As a result, the prosecution requested the opportunity to offer other police witnesses who could establish a chain of custody for the recovered cash. Defendant objected. Before permitting the prosecution witnesses to testify, the trial court discussed with state and defense counsel possible options, including allowing the defense to interview the witnesses before they testified or requiring the state to offer the witnesses as rebuttal witnesses. The trial court ultimately allowed defense counsel to have its investigator interview the witnesses prior to allowing the witnesses' testimony. In addition, the trial court agreed to conduct voir dire of jury members who indicated they knew a Columbus police officer to determine whether any of the jurors knew the prosecution witness. Defendant requested no further relief.
 {¶ 49} Under those circumstances, the trial court did not act in an unreasonable, arbitrary or unconscionable manner. Nor did the trial court's actions render the proceedings to be unfair. Accordingly, defendant's third assignment of error is not persuasive and is overruled.
 {¶ 50} Having overruled defendant's first and third assignments of error but having sustained defendant's second assignment of error, the judgment of the trial court is affirmed in part and reversed in part. Because the kidnapping conviction concerning Kavan Miller should have merged with the aggravated robbery conviction, the trial court impermissibly sentenced defendant on the kidnapping conviction concerning Kavan Miller. Accordingly, we remand the case only for resentencing.
Judgment affirmed in part and reversed in part; case remanded for resentencing.
BROWN and PETREE, JJ., concur.