JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Sean Miner appeals his conviction and sentence in the Cuyahoga County Court of Common Pleas for the following offenses: kidnapping in violation of R.C. 2905.01, attempted rape in violation of R.C. 2923.02/2907.02, gross sexual imposition in violation of R.C. 2907.05, assault in violation of R.C. 2903.13, and robbery in violation of R.C.2911.02. On several of the charges, Miner was also found guilty of a sexual motivation specification and/or of a notice of prior conviction and repeat violent offender specification. Additionally, the trial court determined that Miner was a sexual predator. For the reasons set forth below, we affirm in part, reverse in part, and remand the matter for further proceedings.
 {¶ 2} The facts of this case as set forth in appellant's brief are not disputed by the state and are adopted herein as follows:
 {¶ 3} "Nikita Kidd, the victim, testified for the State. She is 31 years old and lives at 3408 East 149th Apartment 1, in Cleveland. This was her residence on the date of the offense. Her apartment is on the first floor of the building. Her landlord, Johnny Jackson, lives in apartment 5 which is also on the first floor. In May of 2004, she had a male acquaintance by the name of David Hill. On May 13, 2004, while on a date with Mr. Hill, he introduced her to Sean, the appellant. She, Mr. Hill and appellant were together drinking, smoking and playing music. She testified that she was drunk. Around 4:00 a.m. the three went to her apartment. She and Mr. Hill slept in her bedroom that night and appellant slept in the living room. The following morning the three went to breakfast and then to Mr. Hill's family's house. She left Mr. Hill and appellant there and ran errands. She testified that she had not shown any interest in appellant or conveyed wanting to have a physical relationship with him. Later that day she picked up Mr. Hill and appellant and drove appellant to his house in Beachwood so he could get a change of clothes. She then took appellant to an address on East 31st Street. Because she had to be up early for work the following morning she dropped Mr. Hill off at his house around 11:00 p.m.
 {¶ 4} "On May 18, 2004, at approximately 5:00 a.m. she heard somebody knock on her window. She saw that it was appellant. Appellant asked her if he could make a phone call and she said okay. She gave him her cell phone to make the call. Appellant asked if Mr. Hill was there. Appellant used the bathroom and then asked for water. She got him a cup of water and he drank it. He asked her if he could stay in the apartment and she said no. Ms. Kidd testified that appellant then made sexual advances towards her. Appellant asked her if he could have some pussy. He asked a second time as he walked towards her. She thought he was just playing. Appellant continued to walk towards her and she pushed him away. At this time she was against the wall and appellant was holding her. He then started dragging her towards the living room, she started to struggle and he picked her up and slammed her onto the living room floor. As appellant was holding her face down on the floor she was trying to use her cell phone to call the police. He again requested sex and she told him to stop. She yelled for help. He told her if she didn't stay quiet he would hurt her. She got scared and stopped screaming. He covered her mouth with his hands. She was on the living room floor approximately five minutes when he picked her up and brought her into the bedroom. She was struggling and they knocked over the TV and VCR which were at the foot of her bed. He then slammed her onto the bed. Appellant was pulling at her shorts and trying to pry open her legs. He did not get her shorts off. She was on the bed approximately five minutes. She was able to stand up near her dresser. Appellant then rubbed his pelvic area against her behind and caressed her breasts. The touching took place on top of her clothing. There was no skin to skin contact during any of the attack. She was standing up about two minutes when appellant left. She heard knocking on her door. She answered the door and it was her landlord asking if she was okay. She told her landlord a guy had just tried to rape her. She could not find her cell phone. She did not have a land line in her apartment so she used her landlord's telephone to call her place of employment and 911 to report the incident.
 {¶ 5} "Her landlord, Johnny Jackson, testified that he is 79 years old and owns the building in which Ms. Kidd resides. His apartment shares a common wall with Ms. Kidd's apartment. On the morning of May 18, 2004, he heard a noise. He walked through the building to investigate and then heard screaming coming from Ms. Kidd's apartment. He went to her apartment to see if she was alright [sic]. When she answered the door she was shaken up and told him a man tried to rape her. She also asked to use his telephone.
 {¶ 6} "The police responded to Ms. Kidd's apartment within ten minutes of the 911 call. Prior to the police arriving appellant returned to her apartment and knocked on her window saying he had her cell phone and for her to come and get it. She did not open the door. When the police arrived she told them he was just at her window but they were unable to find him. Ms. Kidd also telephoned Sandra McQueen, who is like a mother to her. The officers took photos of her apartment. Ms. Kidd identified State's exhibits 1 through 21 as photographs of her residence. Around noon that day Ms. McQueen took her to St. Vincent Charity Hospital. She introduced State's Exhibit 24 as the hospital records from St. Vincent Hospital. She was prescribed Motrin for shoulder pain.
 {¶ 7} "Sandra McQueen testified for the State. She has known Ms. Kidd since 1996 and they have a mother-daughter relationship. She went to Ms. Kidd's apartment the morning of May 18, 2004. When she arrived Ms. Kidd was crying and told her what had happened. Ms. McQueen testified that she saw the TV and VCR on the floor and the mattress halfway off the bed. Upon Ms. Kidd's request she went to look for Mr. Hill. When she and Mr. Hill returned to Ms. Kidd's apartment the police arrived. Ms. Kidd told her that appellant took her cell phone and that he tried to give it back to her but that she did not want it. When Ms. Kidd went to take a shower, Ms. McQueen called Ms. Kidd's cell phone number. The person answering the phone identified himself as Sean and he thought he was talking to Ms. Kidd. He said he was sorry and told her that he knocked on the window trying to return the cell phone. He said he would pay for any damages. Appellant gave Ms. McQueen his address at his grandmother's house. Ms. McQueen then took Ms. Kidd to the hospital. Ms. Kidd testified that her cell phone was never returned."
 {¶ 8} Miner was convicted of the charges stated above. He has appealed his conviction, raising four assignments of error for our review. His first assignment of error provides:
 {¶ 9} "Assignment of Error I: The evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that appellant was guilty of attempted rape."
 {¶ 10} When an appellate court reviews a record upon a sufficiency challenge, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Leonard, 104 Ohio St.3d 54, 67, 2004-Ohio-6235, quoting State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 11} Miner argues that in this case the victim's clothes were never removed and there was no skin-to-skin contact. Miner claims the evidence was insufficient to support a conviction for attempted rape and cites to a few cases where the evidence did not convincingly demonstrate the defendant intended to rape the victim. We find that Miner's argument is unpersuasive.
 {¶ 12} Rape is defined in R.C. 2907.02(A)(2) as follows: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." An attempt to commit this crime is "conduct that, if successful, would constitute or result in the offense." R.C. 2923.02. The offender must merely take a "`substantial step' in a course of conduct planned to culminate in the commission of the crime." State v. Jester (1987),32 Ohio St.3d 147, 152, citing State v. Woods (1976), 48 Ohio St.2d 127.
 {¶ 13} In this case, the victim testified that Miner made sexual advances toward her and asked her if he could "have some pussy." When the victim pushed Miner away, Miner dragged her toward the living room, slammed her onto the floor, again requested sex, slammed her onto the bed, and began pulling at her shorts and trying to pry her legs open. When he was unsuccessful, he rubbed his pelvic area against her behind and caressed her breasts. Upon our review of the evidence in a light most favorable to the prosecution, we find any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Miner's first assignment of error is overruled.
 {¶ 14} "Assignment of Error II: The trial [court] erred in imposing a consecutive sentence for kidnapping where it constituted an allied offense of similar import to attempted rape and no separate animus existed."
 {¶ 15} R.C. 2941.25(A) states: "Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." Miner asserts that the charges of kidnapping and rape in this case were allied offenses of similar import and that his conviction and sentence for the multiple offenses were erroneous.
 {¶ 16} The offenses of rape and kidnapping may be allied offenses of similar import. State v. Price (1979), 60 Ohio St.2d 136. In State v.Logan (1979), 60 Ohio St.2d 126, the Supreme Court of Ohio established guidelines to determine whether kidnapping and rape are committed with a separate animus so as to permit separate punishment under R.C. 2941.25(B). The court held that "where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions." Id. at paragraph (a) of the syllabus. Conversely, the Logan court recognized that where the asportation or restraint "subjects the victim to a substantial increase in risk of harm separate and apart from * * * the underlying crime, there exists a separate animus." Id. at paragraph (b) of the syllabus.
 {¶ 17} In the instant matter, the record reflects that the restraint of the victim was not prolonged. The victim testified that she was held in the living room for approximately five minutes and then held in the bedroom for an additional five minutes. The victim was never moved from her apartment. The evidence reflects that the movement of the victim to the living room floor and then to her bedroom, along with the restraint of the victim, was incidental to Miner's attempted rape of the victim.
 {¶ 18} We find that upon this record the evidence does not demonstrate that the offenses were significantly independent of each other or that there was a separate animus as to each offense. The evidence reveals that the kidnapping and rape arose out of the same conduct, were committed simultaneously, and were committed with the same animus. Thus, the rape and kidnapping were allied offenses of similar import for which, pursuant to R.C. 2941.25(A), Miner may be convicted of only one. Therefore, this court finds that the trial court erred in sentencing Miner on both the kidnapping and rape charges. Miner's second assignment of error is sustained.
 {¶ 19} Miner's third assignment of error provides:
 {¶ 20} "Assignment of Error III: Appellant was deprived of his liberty without due process of law by the consecutive sentences imposed on him as said sentences do not comport with Ohio's current sentencing structure."
 {¶ 21} In order for a court to impose consecutive sentences pursuant to R.C. 2929.14(E)(4), the court must find that consecutive sentences are (1) necessary to protect the public from future crime or to punish the offender, and (2) not disproportionate to the seriousness of the defendant's conduct and to the danger the defendant poses to the public. The trial court must also find one of the following: (1) the defendant committed the offenses while awaiting trial or sentencing on another charge; (2) the harm caused was so great that no single sentence would suffice to reflect the seriousness of defendant's conduct; or (3) the defendant's criminal history is so egregious that consecutive sentences are needed to protect the public. R.C. 2929.14(E)(4)(a)-(c). In addition to the findings required under R.C. 2929.14(E)(4), R.C. 2929.19(B)(2)(c) also requires that the court give its reasons for imposing consecutive sentences.
 {¶ 22} A review of the transcript in this case reflects that the trial court made the required findings and stated its reasons for the findings. Upon reviewing Miner's prior criminal history, which reflected that Miner was a repeat offender, the court specifically found that consecutive sentences were necessary to protect the public from future criminal activity. The court also found that consecutive sentences were necessary to punish the defendant. The court again reviewed Miner's criminal history and found that his prior juvenile and adult sentences and prison terms had not caused him to conform his behavior. The court reviewed the testimony, including that the victim was held against her will, dragged from room to room, and feared for her life while Miner attempted to rape her. She also believed that Miner would have continued to rape her but for the fact that the landlord knocked at the door. The court found that it did not believe consecutive sentences were disproportionate to the conduct at hand.
 {¶ 23} As the trial court complied with the requirements of R.C.2929.14(E)(4) and 2929.19(B)(2)(c) in sentencing Miner to consecutive terms, his third assignment of error is overruled.
 {¶ 24} Miner's fourth assignment of error provides:
 {¶ 25} "Assignment of Error IV: The evidence was insufficient, as a matter of law, to prove `by clear and convincing evidence' that appellant `is likely to engage in the future in one or more sexually oriented offenses.'"
 {¶ 26} In order for an offender to be classified a sexual predator, the state of Ohio must prove by clear and convincing evidence that the offender has been convicted of a sexually oriented offense and that the offender is likely to engage in the future in one or more sexually oriented offenses. State v. Eppinger, 91 Ohio St.3d 158, 163,2001-Ohio-247. Clear and convincing evidence is the measure or degree of proof which produces in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. Cross v. Ledford
(1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 27} R.C. Chapter 2950 governs sexual predators, habitual sex offenders and sexually oriented offenders. More specifically, under R.C.2950.09(B)(3), when determining whether a defendant is likely to engage in future sexually oriented offenses, the trial court must consider all relevant factors, including, but not limited to, the following: (a) the offender's age; (b) the offender's prior criminal record; (c) the age of the victim of the sexually oriented offense; (d) whether the sexually oriented offense involved multiple victims; (e) whether the offender used drugs or alcohol to impair the victim or prevent the victim from resisting; (f) if the offender previously had been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sex offenders; (g) any mental illness or mental disability of the offender; (h) the nature of the offender's sexual conduct, contact, or interaction in a sexual context with the victim and whether the conduct was part of a demonstrated pattern of abuse; (i) whether the offender, during the commission of the offense, displayed cruelty or threatened cruelty; and (j) any additional behavioral characteristics that contribute to the offender's conduct. R.C. 2950.09(B)(3) (formerly 2950.09(B)(2)).
 {¶ 28} With respect to these factors, the Supreme Court of Ohio has stated that these factors serve as "guidelines" to assist judges in determining whether a defendant who committed a sexually oriented offense is a sexual predator. State v. Thompson, 92 Ohio St.3d 584, 587,2001-Ohio-1288. Further, these guidelines do not control a judge's discretion, but rather, a judge is required to only "consider all relevant factors" including, but not limited to, those listed in R.C.2950.09(B)(3). Id. The statute does not direct the court on what weight, if any, a judge must assign to each factor. Id. at 588. As the Supreme Court of Ohio reasoned, "[s]uch an interpretation makes sense because determining recidivism is at best an imperfect science and while the guidelines set forth potentially relevant factors, some may not be applicable in every case." Id. Accordingly, "`the trial court should consider the statutory factors listed in [R.C. 2950.09(B)(3)], and should discuss on the record the particular evidence and factors upon which itrelies in making its determination regarding the likelihood of recidivism.'" Id., quoting Eppinger, 91 Ohio St.3d at 166. (Emphasis added.)
 {¶ 29} In the case sub judice, the record reflects that the court considered several R.C. 2950.09(B)(3) factors prior to making its decision. Among the factors discussed on the record were Miner's age, his prior criminal record including prior sexual offenses and prior acts of violence, the nature of the offender's sexual conduct with the victim and the force and threats used against her, Miner's lack of rehabilitation, and Miner's lack of treatment by a mental health professional. Also submitted to the court for consideration were copies of prior psychological evaluations and a report from the Ohio Department of Rehabilitation and Correction. The court discussed in detail the particular evidence and factors upon which it relied in making its determination that Miner is a sexual predator. Upon the record before us, we find the trial court's determination was supported by clear and convincing evidence. We find that the court did not err in labeling appellant a sexual predator. Miner's fourth assignment of error is overruled.
Judgment affirmed in part, reversed in part and remanded.
This cause is affirmed in part, reversed in part and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellant and appellee share the costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
CELEBREZZE, JR., P.J., AND CALABRESE, JR., J., CONCUR.