{¶ 183} I must respectfully dissent, in part, from the majority because the trial court erred when it failed to merge the appellant's kidnapping and rape sentences with respect to victims Shine and Stone. The evidence does not support the majority's conclusion that appellant possessed a separate animus for the rape and kidnapping counts as to those two victims. Thus, I would sustain appellant's tenth assignment of error in part. In all other respects, I would affirm the trial court's decision.
 {¶ 184} The Ohio Supreme Court in State v. Adams, 103 Ohio St.3d 508,2004-Ohio-5845, reiterated the guidelines for determining separate animus that it first announced in State v. Logan (1979),60 Ohio St.2d 126. The Court found that "where the restraint or movement of the victim is merely incidental to the underlying crime, there exists no separate animus sufficient to sustain separate convictions." Adams at ¶ 90. The Court went on to explain that rape and kidnapping are committed with a separate animus, as to permit separate punishment (1) "where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense," or (2) "where the asportation or restraint subjects the victim to a substantial risk of harm separate and apart from * * * the underlying crime * * *." Id.
 {¶ 185} In the case of Shine, the majority determines that because the appellant did not instantly release her after the rape — instead repeatedly stomping on her head — that a separate animus existed for her rape and kidnapping. The majority cites the second situation set forth in Adams in reaching its conclusion, i.e., that "where the asportation or restraint subjects the victim to a substantial risk of harm separate and apart from * * * the underlying crime, there exists a separate animus." Id. at ¶ 90. Applying this test, the majority concludes that because stomping on Shine's head after the rape subjected Shine to an increased risk of harm, appellant must have possessed a separate animus for the rape and *Page 35 
kidnapping. ¶ 163, supra.
 {¶ 186} However, the actual focus of the analysis under Adams is whether the "asportation or restraint subjects the victim to a substantial risk of harm separate from the [rape]," and not whetherany conduct by the defendant subjects the victim to substantial risk of harm separate from the rape. Id. at ¶ 90 (emphasis supplied).
 {¶ 187} Although stomping on Shine's head certainly increased her risk of harm, that harm is not related to her asportation or restraint. Shine testified that immediately following the rape appellant got up; called her disparaging names; stomped on her head several times; and then started to rummage through her purse. (Tr. 81). While appellant was busy going through her purse, Shine got up and ran away. (Tr. 81). Thus, following the rape, appellant did not confine, restrain or move Shine.
 {¶ 188} Moreover, the evidence demonstrates that any restraint or asportation that took place before and during Shine's rape was merely incidental to the commission of the rape. Appellant approached Shine on the sidewalk from behind; grabbed her neck; pulled her backwards; and dragged her down a driveway and to the back of an abandoned house where he raped her. (Tr. 73-74). Before and during the rape, appellant hit Shine in the face and head approximately six times in an attempt to keep her quiet. (Tr. 75-76, 80, 88-89). Any movement or restraint that occurred before or during the rape was merely incidental to the commission of the rape.
 {¶ 189} The circumstances surrounding Shine's rape and kidnapping are similar to those in several cases where Ohio courts did not find a separate animus for rape and kidnapping.
 {¶ 190} For example, in Adams the defendant broke into the home of a mother and her 12-year-old daughter; killed the mother; and then raped and strangled the daughter in her bedroom. The evidence showed that the daughter was not moved from her bedroom at any time, and that the whole incident happened *Page 36 
quickly, probably in a matter of minutes. The Ohio Supreme Court held that there was no separate animus for the rape and kidnapping because there was "no evidence * * * that [the defendant] moved [the victim] to or from the bedroom where she was killed or that he tied her up or restrained her in any way other than what was necessary to rape and kill her." Adams, 103 Ohio St.3d at ¶ 93. The Court further found "no evidence exists in the record of substantial movement, prolonged restraint, or secretive confinement." Id. As a result, the Court held that the defendant's separate convictions for kidnapping and rape involved allied offenses of similar import and accordingly vacated the defendant's conviction for kidnapping. Id. at ¶ 94-95.
 {¶ 191} In the same vein, in State v. Miner, 8th Dist No. CR-453818,2005-Ohio-5445, the defendant was an acquaintance of the victim and the victim allowed the defendant to enter her apartment. Once inside, the defendant made sexual advances towards the victim and she rebuked him. The defendant then picked up the victim and slammed her down onto the living room floor. After about five minutes, the defendant carried her to the bedroom, slammed her down on the bed and attempted to rape her. After about five minutes on the bed, the victim was able to stand up, during which time the defendant rubbed up against her and caressed her. Approximately two minutes later, the defendant left the victim's apartment. Based on these facts, the court in Miner found that, "the restraint of the victim was not prolonged," and "the movement of the victim to the living room floor and then to her bedroom, along with the restraint of the victim, was incidental to [the defendant's] attempted rape of the victim." Id. at ¶ 17. Accordingly, the court found that the attempted rape and kidnapping were allied offenses of similar import, committed with the same animus, and vacated the kidnapping conviction and set aside the sentencing. Id. at ¶ 18
 {¶ 192} Finally, in State v. Willis, 1st Dist. No. C-040588,2005-Ohio-5001, at ¶ 8, the defendant "attempted to rape the victim as she was walking home late in the evening. He took her purse, told her that he wanted to have sex with her, *Page 37 
and then pushed her down on a `grassy area' by the street. He then attempted to rape her, but passing cars were bothersome so he grabbed her by the arm and led her away from the street, near some train tracks with dense trees and bushes." Id. at ¶ 7. The victim was able to escape because the defendant slipped and fell as he tried to drag her into the bushes. The court found that "[s]imilar to Adams, the state here did not present any evidence that the victim was moved or restrained any more than was necessary to attempt to rape her. There is nothing in the record indicating that there was any substantial movement of the victim from the street where [the defendant] encountered her or any prolonged restraint." Id. at ¶ 8. Accordingly, the court reversed the defendant's conviction for kidnapping and set aside the sentence imposed for kidnapping. Id. at ¶ 10.
 {¶ 193} In all the above-cited cases, the victims were released very soon after being raped and any asportation or restraint that took place before or during the rape was merely incidental to the commission of the rape. Similarly, in the instant case, Shine was released almost immediately after she was raped. Although appellant stomped on Shine's head after the rape, the evidence shows that Shine ran away shortly thereafter. In addition, appellant's act of dragging Shine to the back of an abandoned house was done merely to facilitate the commission of the rape. As in Adams, Miner andWillis, Shine's rape and kidnapping were committed with the same animus. Thus, the trial court should have merged the kidnapping and rape sentences with respect to Shine.
 {¶ 194} In the case of Stone, the majority relies on State v.Parker, 7th Dist. No. 30-MA-190, 2005-Ohio-4888, concluding that the facts surrounding Stone's rape are similar to those in Parker, and that therefore a separate animus existed for Stone's rape and kidnapping. ¶ 165, supra. However, the two cases are factually distinguishable.
 {¶ 195} In Parker, the defendant broke into the house where the victim was babysitting; confronted her in the TV room with a gun; choked her; and led her to an upstairs bedroom where he raped her. After the rape, the defendant told the *Page 38 
victim that he would kill her babysitting charges if she left the bedroom. When the children's mother returned home, the children told her about the attack, and she called police. The terrified victim remained in the upstairs bedroom until police arrived. This court found that the restraint on the victim's movement after the rape was significant enough that it could not be viewed as incidental to the rape, and that therefore a separate animus existed for the two crimes. Id. at ¶ 27.
 {¶ 196} In the instant matter, appellant first approached Stone as she was coming down the rear steps of her apartment building. (Tr. 355). Appellant put Stone in a chokehold, dragged her into the backyard and raped her. (Tr. 355-58). Stone testified that appellant had one hand in his pocket and she believed this to mean that appellant had a gun. (Tr. 356). Following the rape, appellant told Stone to lie on the ground and look the other way. (Tr. 357, 363). Stone complied with the first order but did turn her head to watch appellant leave. (Tr. 357). Once Stone observed appellant walking down the street and away from her, Stone got up and ran to her neighbor's door. (Tr. 357).
 {¶ 197} Although appellant's conduct following Stone's rape,i.e., ordering her to lie on the ground, may have constituted a restraint on Stone's liberty, there is nothing in the record to suggest that this restraint was prolonged or secretive. Conversely, inParker the victim was confined in the bedroom for a significant period of time following the rape. Thus, I do not share the majority's view that the confinement following Stone's rape is similar to that inParker. Appellant did not possess a separate animus for Stone's rape and kidnapping. Thus, the trial court should have merged the rape and the kidnapping sentences with respect to Stone.
 {¶ 198} Thus, for the above reasons, I must respectfully dissent in part from the majority's conclusion that the trial court committed no error when it failed to merge the appellant's kidnapping and rape sentences with respect to victims Shine and Stone. Appellant's tenth assignment of error should be sustained in part, and these two kidnapping sentences set aside. Additionally, appellant's kidnapping convictions should be vacated with respect to these victims. Although appellant did *Page 39 
not specifically request this relief within his assignments of error, R.C. 2941.25(A)(B) mandates that where a defendant's conduct consists of two or more allied offenses of similar import committed with the same animus, the defendant may be convicted of only one of the offenses. *Page 1