DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Donavan Marshall, appeals his convictions out of the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} Appellant was indicted on one count of kidnapping in violation of R.C. 2905.01(A)(2)/(3), a felony of the first degree; one count of felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree; one count of domestic violence in violation of R.C.2919.25(A), a felony of the fourth degree; and one count of grand theft in violation of R.C. 2913.02(A)(1)/(4), a felony of the fourth degree. Appellant entered a plea of not guilty to all four counts.
 {¶ 3} On April 20, 2005, appellant executed a notice of his waiver of jury trial. On April 25, 2005, appellant again executed a waiver of his right to trial by jury and further waived his jury trial rights in open court immediately prior to the commencement of trial. The matter proceeded to trial before the court. At the conclusion of the bench trial, the trial court found appellant guilty of all four charged offenses. On April 29, 2005, the trial court sentenced appellant to five years on each count of kidnapping and felonious assault and one year on each count of domestic violence and grand theft, with all sentences to be served concurrently. Appellant timely appealed, raising five assignments of error for review. This Court consolidates the first three assignments of error for ease of review.
 II. ASSIGNMENT OF ERROR I
"THE TRIAL COURT ERRED BY FINDING APPELLANT GUILTY OF KIDNAPPING."
 ASSIGNMENT OF ERROR II
"THE TRIAL COURT ERRED BY FINDING APPELLANT GUILTY OF FELONIOUS ASSAULT."
 ASSIGNMENT OF ERROR III
"THE TRIAL COURT ERRED BY FINDING APPELLANT GUILTY OF GRAND THEFT."
 {¶ 4} Appellant argues that the trial court erred by finding him guilty of kidnapping, felonious assault and grand theft; because the State failed to present sufficient evidence to prove those offenses beyond a reasonable doubt. This Court disagrees.
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Galloway (Jan. 31, 2001), 9th Dist. No. 19752.
 {¶ 5} The test for sufficiency requires a determination of whether the State has met its burden of production at trial. State v. Walker (Dec. 12, 2001), 9th Dist. No. 20559; See, also, State v. Thompkins (1997),78 Ohio St.3d 380, 390.
 {¶ 6} The trial court found appellant guilty of one count each of kidnapping, felonious assault and grand theft.
 {¶ 7} R.C. 2905.01(A)(2)/(3), kidnapping, states that
"[n]o person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o facilitate the commission of any felony or flight thereafter[, or] [t]o terrorize, or to inflict serious physical harm on the victim or another[.]"
 {¶ 8} R.C. 2903.11(A)(1), felonious assault, states that "[n]o person shall knowingly * * * [c]ause serious physical harm to another or to another's unborn[.]"
 {¶ 9} R.C. 2913.02(A)(1)/(4), theft, states that
"[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent or the owner or person authorized to give consent[, or] [b]y threat[.]"
In addition, R.C. 2913.02(B)(5) states that "[i]f the property stolen is a motor vehicle, a violation of this section is grand theft of a motor vehicle[.]"
 {¶ 10} At trial, the victim, Shannon Rodgers, testified that she and appellant had an on-again off-again relationship for many years and that appellant is the father of her two children, although they are not married. She testified that, although she had lived with appellant in his parents' home at some time, she was living only with her own parents at the time of the incident.
 {¶ 11} The victim testified that, on the evening and early morning hours of January 29 and 30, 2005, she was out with friends celebrating her birthday. She testified that she drove to her sister's house at approximately 2:30 a.m. on January 30, 2005, at which time she saw appellant, her brother-in-law and another person standing outside. She stated that appellant began screaming at her and calling her names. The victim testified that she began to drive away, but that appellant held on to her car. Appellant was dragged down the street until the victim stopped at a corner. Appellant's boots came off as he was dragged down the street.
 {¶ 12} The victim testified that, when she stopped her car, appellant dragged her out of the driver's seat, put her on her back in the back seat, and got on top of her. She testified that appellant continued to scream accusations and vulgar epithets at her until her brother-in-law Gary Parsons pulled appellant off her. While appellant began to challenge Mr. Parsons, the victim testified that she returned to the driver's seat of her car.
 {¶ 13} The victim testified that appellant then pushed her over to the passenger's seat and entered the driver's seat. She testified that she begged appellant to let her out of the car, but appellant grabbed her by the hair and sped off. Ms. Rodgers testified that appellant began to hit her in the head at least twenty times. She stated that appellant then grabbed her hair and pulled her head into his lap. The victim testified that, when she tried to reach up to hit appellant, he bit her arm and finger. She testified that there was so much blood that she thought appellant had severed her finger with his teeth. The victim testified that appellant shoved her head into the dashboard at one point.
 {¶ 14} Ms. Rodgers testified that appellant entered the expressway and drove one hundred miles per hour according to the speedometer. She testified that appellant then slammed on the brakes and the car spun in a full circle. She stated that she begged appellant not to kill them.
 {¶ 15} The victim testified that appellant then made several stops, once taking the car keys with him, and twice leaving the keys but remaining close and within view of the car. Ms. Rodgers testified that she was able to use a hidden cell phone to quickly call her sister, Amy Parsons, to ask her to call the police. The victim testified that she was afraid to run, because she knew that appellant would catch her. She testified that she mustered the courage to move to the driver's seat with the intent to leave, but appellant was immediately at the window foreclosing her opportunity to leave. The victim testified that each time appellant returned to the car, he began to beat her again. After appellant returned to the car the third time, the victim testified that he hit her one last time and that she could not remember anything else until appellant woke her to tell her that the police were at his mother's home. The victim did not know whether she remained conscious throughout the ordeal. She testified that appellant told her to tell the police that she had gotten into a fight with another woman in a bar.
 {¶ 16} The victim testified that she was ultimately taken to a hospital emergency room for treatment. She testified that the hospital ordered a CAT scan and x-rays. She testified that her face was bruised and swollen, her back was bruised, she had bite marks on her finger and arm, and that she lost half of her hair due to appellant's pulling her head to his lap. Photographs admitted into evidence showed obvious bruises and abrasions on the victim's face and back. The photographs further showed a large discolored bite mark on the victim's arm and broken skin on her finger.
 {¶ 17} The victim testified that, although appellant had used her car in the past to transport their children and bring the vehicle for an oil change, she did not consent to appellant's use of the car on the early morning of the incident. She testified that she told appellant to take the car and let her go only because she was afraid. She further testified that she begged appellant to bring her to the hospital after he had beaten and bit her but that he refused.
 {¶ 18} Amy and Gary Parsons testified at trial, confirming the victim's testimony. Amy testified that she and the victim had been out celebrating Ms. Rodgers' birthday and that Amy was awakened by the victim's cellular call at 3:30 a.m. on January 30, 2005. Amy testified that she then called 911 and informed the operator that appellant had kidnapped the victim and stolen the victim's car. She reported that the victim said appellant bit her finger and that she needed stitches.
 {¶ 19} Gary Parsons testified that he witnessed the initial altercation between appellant and the victim outside his house at approximately 2:30 a.m. He testified that appellant approached the victim's car and that they argued, because appellant wanted to drive and the victim refused. Gary testified that the victim drove away, while appellant held on to the car door. He stated that when the victim stopped the car, he heard her screaming. Gary testified that he ran to the victim's car and saw appellant on top of the screaming victim in the back seat. He testified that he pulled appellant off the victim.
 {¶ 20} Gary testified that appellant began to confront him, while the victim moved to the front driver's seat. Gary testified that appellant then jumped into the victim's car and sped away. Gary did not see how appellant assumed the driver's seat, when the victim was sitting there.
 {¶ 21} Ryan Gween testified that he was at the Parsons' home in Summit County after midnight on January 30, 2005, when he heard a commotion outside. He testified that he walked toward a car and saw Shannon Rodgers and appellant in the car. Gween testified that appellant was in the back seat on top of Rodgers. He stated that appellant's hands were on Rodgers and that she was screaming.
 {¶ 22} Gween testified that Gary Parsons pulled appellant off Rodgers and that Parsons and appellant argued, while Rodgers moved to the driver's seat of the car. He testified that appellant then jumped into Rodgers' car, pushing her over to the side passenger's seat, and drove away. Gween testified that Rodgers was crying as appellant drove her away.
 {¶ 23} Officer Warren Soulsby of the Akron Police Department testified that he was dispatched to the Parsons' home regarding a possible abduction. He testified that he spoke with Amy and Gary Parsons about the situation, then he ran a check through his computer for appellant's last known address. Officer Soulsby testified that he went to that address, but no one responded to his partner's knocks. He stated that his partner saw a car matching the description of the victim's car, but the officers were unable to catch the car. Officer Soulsby testified that he and his partner waited near appellant's home for the victim's vehicle to return. The vehicle returned to the area, and police pursued it. Officer Soulsby testified that the vehicle stopped, reversed, and sped away. The police initiated lights and sirens and followed the vehicle.
 {¶ 24} Officer Soulsby testified that the vehicle pulled into a driveway, and the driver ran from the car. Officer Soulsby followed on foot. He testified that he followed what appeared to be bare footprints in the snow, until he caught up to and apprehended appellant crouching in the snow behind a garage. He placed appellant under arrest and returned to the car he had pursued.
 {¶ 25} Officer Soulsby testified that he saw Shannon Rodgers in the front passenger seat of the car. He described her as visibly distraught, with red marks and bruising on her face, blood on her right index finger, and a large bite mark on her arm. He added that Ms. Rodgers was shaking, that her speech was very slow, and she appeared to be disoriented. Officer Soulsby testified that the police notified EMS to assess the victim's injuries and the police department crime scene unit to process the victim's vehicle.
 {¶ 26} Officer Justin Ingham of the Akron Police Department testified that he received a BOLO (be on the lookout for) for the victim's car on the morning of January 30, 2005. He testified that he arrived on the scene, then followed the victim to the hospital where the police photographed the victim's injuries. He observed that Ms. Rodgers appeared extremely tired and in pain. He noted that she had a very swollen black eye and bite mark on her arm.
 {¶ 27} Detective Dorsey of the Akron Police Department testified that he was called to the scene where appellant was apprehended to photograph the victim's vehicle. The photographs of the interior of the car showed blood in various places. He testified that he also took photographs of the victim in the hospital emergency room.
 {¶ 28} Eula Roberts, a paramedic and emergency medical technician with the Akron Fire Department, testified that she responded to a dispatch regarding Ms. Rodgers. She testified that she treated Ms. Rodgers at the scene, noting that the victim had facial and upper extremity trauma, bruising and abrasions, and bite marks. Ms. Roberts testified that EMS transported the victim to the hospital pursuant to protocol, because she had efficient head trauma and loss of consciousness.
 {¶ 29} Detective Russ McFarland of the Akron Police Department's crimes against persons unit testified that he was sent to the scene of appellant's apprehension and later the hospital. He noted the victim's injuries and took her statement. He testified that the victim appeared to be in pain.
 {¶ 30} Detective McFarland testified that he later interviewed appellant, who expressed confusion that he could be charged with auto theft, because he had used the victim's car in the past. According to Detective McFarland's testimony, appellant said that the victim willingly went with him on the night of the incident, and further that he did not understand how he could be charged with felonious assault "because he didn't beat her that bad." Detective McFarland testified that appellant admitted to domestic violence. Specifically, Detective McFarland testified that appellant admitted that he punched Ms. Rodgers several times "to control her."
 {¶ 31} Detective McFarland testified that he summoned a forensic odontologist to identify the bite mark on the victim's arm. He testified that appellant agreed to submit to the collection of buccal swabs, but questioned why an impression of his teeth was necessary, when he had already admitted to biting the victim.
 {¶ 32} Based on the evidence presented at trial, this Court finds that there was sufficient evidence, when construed in a light most favorable to the prosecution, to convince an average person that appellant was guilty beyond a reasonable doubt of the crimes of kidnapping, felonious assault and grand theft.
 {¶ 33} Appellant forced Shannon Rodgers into the back seat of her car and restrained her liberty by sitting on top of her until Gary Parsons pulled appellant off the victim. Appellant forced his way into the victim's car, pushing the victim from the driver's seat to the passenger's seat, as the victim screamed. Appellant then drove away with the victim, refusing to let her go. As he drove, appellant continually beat on the victim, bit her severely, insulted and attacked her character, and drove recklessly at an excessive rate of speed. The victim's medical records, to which the parties stipulated, indicate that the victim reported that appellant laughed as he pulled her head into his lap and beat the victim's face with his fist. The victim testified that she feared for her life.
 {¶ 34} This Court finds that the State presented sufficient evidence to allow a rational trier of fact to find beyond a reasonable doubt that appellant forcibly restrained Shannon Rodgers' liberty and removed her from the place where she was found to terrorize and inflict serious physical harm on her. Accordingly, the trial court did not err by finding appellant guilty of kidnapping.
 {¶ 35} Appellant admitted to Detective McFarland that he hit and bit the victim. R.C. 2901.01(5) defines "serious physical harm to persons" as any of the following:
"(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
"(b) Any physical harm that carries a substantial risk of death;
"(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
"(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
"(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 36} The victim testified that she remembered one last "blow" after appellant drove away from a gas station, then nothing else until appellant woke her while the car was parked behind an apartment complex on Florida Avenue. The victim's medical records indicate that she reported to medical staff that she lost consciousness for an unknown period of time. Officer Soulsby testified that the victim appeared to be disoriented and that her speech was slow after the incident. Based on this evidence, this Court finds that there is sufficient evidence to show that the victim suffered some temporary, substantial incapacity as a result of appellant's assault. State v. Bradford, 9th Dist. No. 22441, 2005-Ohio-5804.
 {¶ 37} In addition, appellant's teeth broke the victim's skin on both her finger and arm. The bite mark on the victim's arm measured more than 2 inches in diameter and was deeply bruised and discolored. The victim's right eye was noticeably bruised and swollen. At trial, the victim testified that she retains a scar from appellant's bite on her arm. Based on this evidence, this Court finds that the State presented sufficient evidence to show that the victim suffered some temporary, serious disfigurement as a result of appellant's assault.
 {¶ 38} Finally, Detective Russ McFarland and Officer Justin Ingham testified that the victim appeared to be in pain after the incident. The victim's medical records indicate that she received morphine intravenously and was released with a prescription for Vicodin for pain management. Based on this evidence, this Court finds that the State presented sufficient evidence to show that the victim suffered some degree of prolonged or intractable pain as a result of appellant's assault.
 {¶ 39} This Court finds that the State presented sufficient evidence to allow any rational trier of fact to find beyond a reasonable doubt that appellant knowingly caused serious physical harm to Shannon Rodgers. Accordingly, the trial court did not err by finding appellant guilty of felonious assault.
 {¶ 40} Appellant was driving the victim's car during the incident. The victim testified that she did not willingly consent to appellant's use of the car during that time. She told appellant to take her car and let her go, but only out of fear for her safety due to appellant's abusive behavior. The victim begged appellant to take her to the hospital for medical treatment, but appellant refused to relinquish control of the car. Ryan Gween testified that he witnessed appellant push the victim from the driver's seat to the passenger's seat and drive away, as the victim was crying. Gary Parsons testified that he saw the victim move to the driver's seat after Gary pulled appellant off the victim. He then saw appellant enter the car on the driver's side and speed away. Based on this evidence, this Court finds that the State presented sufficient evidence to allow a rational trier of fact to find beyond a reasonable doubt that appellant knowingly exerted control over Shannon Rodgers' car without her consent and by threat with the purpose to deprive the victim of the use of her car. Accordingly, the trial court did not err by finding appellant guilty of grand theft.
 {¶ 41} Appellant's first, second and third assignments of error are overruled.
 ASSIGNMENT OF ERROR IV
"THE TRIAL COURT ERRED BY GRANTING APPELLANT ONLY TWO MINUTES FOR CLOSING ARGUMENT."
 {¶ 42} Appellant argues that the trial court's limiting of closing arguments to two minutes per side denied appellant a full and complete defense in violation of his due process rights. This Court disagrees.
 {¶ 43} At the conclusion of trial, the trial court announced that it would allow each side two minutes for closing argument. Appellant failed to object. The State presented its closing and the trial court cut off the assistant prosecutor in mid-sentence, stating, "You've used your two minutes, Miss Easter." Appellant failed to object to the time limitation and proceeded with his own closing argument. The trial court cut off appellant's counsel in mid-sentence, stating, "You've used your two minutes." Appellant's counsel responded, "I thank the court for listening." Appellant failed to object. Because appellant failed to object to the trial court's limiting of closing arguments before the trial court, he has waived the issue on appeal. State v. Widman (May 16, 2001), 9th Dist. No. 00CA007681, citing Schade v. Carnegie Body Co.
(1982), 70 Ohio St.2d 207, 210. Appellant's fourth assignment of error is overruled.
 ASSIGNMENT OF ERROR V
"THE TRIAL COURT ERRED BY NOT CONSIDERING DOMESTIC VIOLENCE AND FELONIOUS ASSAULT ALLIED OFFENSES AND CONVICTING APPELLANT OF BOTH."
 {¶ 44} Appellant argues that the trial court erred by convicting appellant of both domestic violence and felonious assault, as the two crimes are allied offenses of similar import. This Court disagrees.
 {¶ 45} R.C. 2941.25(A) provides that "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." The Ohio Supreme Court has established a two-part test to determine whether two crimes are allied offenses of similar import. State v. Blankenship
(1988), 38 Ohio St.3d 116, 117.
"In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses." (Emphasis omitted.) Id., citing State v.Mughni (1987), 33 Ohio St.3d 65, 67; State v. Talley (1985),18 Ohio St.3d 152, 153-154; State v. Mitchell (1983), 6 Ohio St.3d 416,418; State v. Logan (1979), 60 Ohio St.2d 126, 128.
 {¶ 46} Appellant was convicted of domestic violence in violation of R.C. 2919.25(A), and felonious assault in violation of R.C. 2903.11(A)(1). R.C. 2919.25(A) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C.2919.25(F)(1) defines "family or household member" as
"(a) Any of the following who is residing or has resided with the offender:
"(i) A spouse, a person living as a spouse, or a former spouse of the offender;
"(ii) A parent or a child of the offender, or another person related by consanguinity or affinity to the offender;
"(iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender.
"(b) The natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent."
R.C. 2901.01(3) defines "physical harm to persons" as "any injury, illness, or other physiological impairment, regardless of its gravity or duration.
 {¶ 47} R.C. 2903.11(A)(1) provides that "[n]o person shall knowingly [c]ause serious physical harm to another or to another's unborn." R.C.2901.01 defines "serious physical harm to persons" as any of the following:
"(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
"(b) Any physical harm that carries a substantial risk of death;
"(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
"(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
"(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 48} Accordingly, domestic violence requires proof that appellant (1) knowingly, (2) caused or attempted to cause, (3) physical harm, (4) to a family or household member. Felonious assault requires proof that appellant (1) knowingly, (2) caused, (3) serious physical harm, (4) to another or to another's unborn."
 {¶ 49} Comparing the elements of the two crimes, this Court does not find that the elements correspond to such a degree that the commission of domestic violence necessarily results in the commission of felonious assault. Domestic violence may occur without a felonious assault, where the harm does not rise to the level of serious physical harm. Likewise, felonious assault may occur without domestic violence, where the victim is not a family or household member.
 {¶ 50} Because this Court finds that the elements of domestic violence and felonious assault do not correspond to such a degree that the commission of one crime will result in the commission of the other, we need not reach the second step of analyzing appellant's conduct. Based on our analysis of the first step, this Court finds that domestic violence and felonious assault are not allied offenses of similar import. Accordingly, the trial court did not err by convicting appellant of both crimes. Appellant's fifth assignment of error is overruled.
 III. {¶ 51} Appellant's assignments of error are overruled. Appellant's convictions out of the Summit County Court of Common Pleas are affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
Exceptions.
Whitmore, P.J., Reece, J., Concur
(Reece, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)