THE STATE OF OHIO, APPELLEE, *v.* LOGAN, APPELLANT.

(No. 79-229—Decided December 19, 1979.)

*Mr. Stephan M. Gabalac,* prosecuting attorney, and *Mr. Carl M. Layman, III,* for appellee.

*Mr. J. Tullis Rogers* and *Ms. Elizabeth Manton,* for appellant.

HOLMES, J. In a challenge grounded upon Ohio's multiple-count statute, R. C. 2941.25, appellant urges this court to set aside his conviction for kidnapping. He asserts that rape and kidnapping are allied offenses of similar import, that he possessed but a single animus in carrying out his course of criminal conduct as to these offenses, and that the courts below erred in permitting his kidnapping conviction to stand.

Prior to the discussion of the issues presented here, we set forth the multiple-count statute, R. C. 2941.25:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

At the outset we note that this general subject of the allied offenses of rape and kidnapping was recently addressed by the court in *State* v. *Donald* (1979), 57 Ohio St. 2d 73. In *Donald,* this court held that, "[k]idnapping, as defined by R. C. 2905.01 (A) (4), is an 'offense of similar import' to rape, as defined by R. C. 2907.02 (A) (1), for purposes of application of R. C. 2941.25 (A)."

This court also has recently discussed the impact of R. C. 2941.25 (B) in *State* v. *Frazier* (1979), 58 Ohio St. 2d 253. The instant cause presents the court with a further opportunity to examine R. C. 2941.25 both as to subsection (A) and subsection (B).[1]

The conclusion in *Donald* was reached following a comparison of the respective elements of the offenses of kidnapping and rape, and the observation, at page 75, that both crimes "by their very nature, are committed for the same purpose."[2]

In essence, *Donald* established that in order for two crimes to constitute allied offenses of similar import, there must be a recognized similarity between the elements of the crimes committed. The offenses and their elements must correspond to such a degree that commission of the one offense will result in the commission of the other.

In addition to the requirement of similar import of the crimes committed, the defendant, in order to obtain the protection of R. C. 2941.25 (A), must show that the prosecution has relied upon the same conduct to support both offenses charged. The significance of the holding of *Donald* was that

---

[1] In *Donald, supra,* at page 75, at fn. 3, we stated that "[n]o issue has been raised or determined as to whether the two offenses were 'committed separately or with a separate animus as to each,' within the provision of R. C. 2941.25 (B) permitting conviction of two or more similar offenses under such circumstances."

[2] Upon further reflection, we believe that such an analysis would have been more appropriate in considering the impact of R. C. 2941.25 (B) than in a discussion addressed solely to R. C. 2941.25 (A).

the defendant would be afforded the protection of subsection (A) where the facts[3] were such that the same conduct by the defendant could be construed to constitute two allied offenses of similar import.

Even though there might be a shield initially provided a defendant under R. C. 2941.25 (A) where charged with multiple counts, he still must overcome the hurdle of R. C. 2941.25 (B). This section, in essence, provides that notwithstanding the fact that a defendant is charged with two or more offenses of the same or similar kind he may be convicted of all of them if he committed them separately, or if he possessed a separate "animus" as to each. In so providing, R. C. 2941.25 (B) "carves an exception to division (A) of the same statute***." *State* v. *Frazier, supra,* at page 255.

We believe it to be necessary to establish reasonable criteria for the determination of what might constitute separate animus, within the meaning of R. C. 2941.25 (B), when a defendant has been charged with multiple offenses including kidnapping. To facilitate the establishment of such criteria, we briefly review the background of the crime of kidnapping.

At common law, kidnapping was defined as the "forcible abduction or stealing away of a man, woman, or child from their own country and sending them into another." 4 Blackstone's Commentaries 219.

In 1866, the General Assembly enacted this state's first general kidnapping statute, which apparently required the victim's asportation from the state or the imprisonment of the victim with the intent of removing him from the state (63 Ohio Laws 16).

The next significant development in the law of kidnapping occurred in 1902, when the element of asportation was eliminated. The statute, as amended, prescribed imprisonment for one to twenty years for one who "kidnaps, or forcibly or fraudulently carries off, detains or decoys any person***" (95 Ohio Laws 100). In addition, a second statute was enacted (95 Ohio Laws 648), which imposed harsher penalties for kidnapping for purposes of extortion.

---

[3] Defendant forced his way into a stockroom office at Good Samaritan Hospital in Dayton, and, through threat of physical harm required a supervisor to proceed from her office to another room where the defendant raped her.

Our current statute, R. C. 2905.01, combines elements of the former statutes, but expands upon the previous definition of kidnapping. It provides, as follows:

"(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where he is found or restrain him of his liberty, for any of the following purposes:

"(1) To hold for ransom, or as a shield or hostage;

"(2) To facilitate the commission of any felony or flight thereafter;

"(3) To terrorize, or to inflict serious physical harm on the victim or another;

"(4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against his will;

"(5) To hinder, impede, or obstruct a function of government, or to force any action or concession on the part of governmental authority.

"(B) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall knowingly do any of the following, under circumstances which create a substantial risk of serious physical harm to the victim:

"(1) Remove another from the place where he is found;

"(2) Restrain another of his liberty;

"(3) Hold another in a condition of involuntary servitude.

"(C) Whoever violates this section is guilty of kidnapping, a felony of the first degree. If the offender releases the victim in a safe place unharmed, kidnapping is a felony of the second degree."

It is clear from the plain language of the statute that no movement is required to constitute the offense of kidnapping; restraint of the victim by force, threat, or deception is sufficient. Thus, implicit within every forcible rape (R. C. 2907.02 [A] [1]) is a kidnapping. The same may be said of robbery (R. C. 2911.02), and, under certain circumstances, of felonious assault (R. C. 2903.11).

Recognizing that in many cases a single criminal act could constitute two or more similar crimes, the General Assembly attempted to remedy this problem by enacting

R. C. 2941.25, the multiple-count provision, as previously set forth.

The legislative Committee Comment to R. C. 2941.25 observes that "[t]he basic thrust of the section is to prevent 'shotgun' convictions." By way of example, the comment mentions that a thief is theoretically guilty of both theft and receiving stolen goods, but states that under this section he may be convicted of only one of those offenses.

It is apparent that the statute has attempted to codify the judicial doctrine—sometimes referred to as the doctrine of merger[4], and other times as the doctrine of divisibility of offenses[5]—which holds that "a major crime often includes as inherent therein the component elements of other crimes and that these component elements, in legal effect, are merged in the major crime." *State v. Botta* (1971), 27 Ohio St. 2d 196, 201. However, R. C. 2941.25 (B), by its use of the term "animus," requires us to examine the defendant's mental state in determining whether two or more offenses may be chiseled from the same criminal conduct. In this sense, we believe that the General Assembly intended the term "animus" to mean purpose or, more properly, immediate motive.

Like all mental states, animus is often difficult to prove directly, but must be inferred from the surrounding circumstances. See, generally, *State v. Robinson* (1975), 48 Ohio App. 2d 197, 205, affirmed (1976) 47 Ohio St. 2d 103, 114; *State v. Gantt* (1975), 26 N.C. App. 554, 557, 217 S.E. 2d 3, 5; and *State v. Evans* (1976), 219 Kan. 515, 519-20, 548 P. 2d 772, 777.

Where an individual's immediate motive involves the commission of one offense, but in the course of committing that crime he must, *a priori,* commit another, then he may well possess but a single animus, and in that event may be convicted of only one crime. For example, when a person commits the crime of robbery, he must, by the very nature of the crime, restrain the victim for a sufficient amount of time to complete the robbery. Under our statutes, he

---

[4] *See, e.g., State* v. *Botta* (1971), 27 Ohio St. 2d 196, 201; *People* v. *Miles* (1969), 23 N.Y. 2d 527, 539, 245 N.E. 2d 688.

[5] *See, e.g.,* 1 Wharton's Criminal Law & Procedure 67, Section 32 (1957).

simultaneously commits the offense of kidnapping (R. C. 2905.01 [A] [2]) by forcibly restraining the victim to facilitate the commission of a felony. In that instance, without more, there exists a single animus, and R. C. 2941.25 prohibits convictions for both offenses. Likewise, where an individual's immediate motive is to engage in sexual intercourse, and a so-called "standstill" rape is committed, the perpetrator may be convicted of either rape or kidnapping, but not both. In contradistinction, an individual who restrains his intended rape victim for several days prior to perpetrating the rape, or who transports her out of the state or across the state while intermittently raping her, may well be considered to have a separate animus as to each of the offenses of kidnapping and rape, and convictions on multiple counts could reasonably be sustained.

Having discussed the extreme cases and the principles applicable to them, we now confront those cases which are not so easily resolved. In the case at bar, appellant forced the victim into an alley and down a flight of stairs prior to raping her. Under these circumstances we must resolve whether there was a separate animus as to each offense charged. In making this determination we look to a number of decisions from other jurisdictions which have reviewed similar issues presented to them concerning what might constitute separate crimes.

A well recognized decision in the area of divisibility of offenses is *People* v. *Levy* (1965), 15 N.Y. 2d 159, 204 N.E. 2d 842, *certiorari denied*, 381 U.S. 938. In that case two armed men commandeered a car which had stopped in front of the owner's residence. One of the men drove the car approximately 27 city blocks, while the other robbed the occupants of personal possessions. The driver's accomplice and two others who were implicated in the crime were convicted, *inter alia*, of counts of kidnapping and first-degree robbery.

In reversing the defendants' convictions for kidnapping, the New York Court of Appeals noted, at page 164, that the statutory definition of kidnapping "could literally overrun several other crimes, notably robbery and rape***." The court then stated that "[i]t is unlikely that these restraints, sometimes accompanied by asportation, which are incidents

to other crimes\*\*\*were intended by the legislature\*\*\*to constitute a separate crime of kidnapping\*\*\*." So finding, the court limited the application of the kidnapping statute to kidnapping in the "conventional sense."

The New York rule was further explained in *People* v. *Lombardi* (1967), 20 N.Y. 2d 266, 229 N.E. 2d 206, and in *People* v. *Miles* (1969), 23 N.Y. 2d 527, 245 N.E. 2d 688. The court in *Miles* pointed out the parameters of the rule, at page 539, as follows:

"\*\*\*The more complicated nature of the asportation, with changes in purpose and direction, first to a place in New Jersey, and then to New York, for purposes connected with but not directly instrumental to the attempt to kill Brooks, removes this case from the exception of the *Levy-Lombardi* rule.

"\*\*\*

"\*\*\*Nor was the *Levy-Lombardi* rule intended to exclude from the 'traditional' or 'conventional' kidnapping abductions designed to effect extortions or accomplish murder."

It appears that in New York there must be an asportation which is not merely incidental to the "true" crime in order to sustain a conviction for kidnapping, although movement of a more complicated nature may be sufficient. Also under the New York rule it is clear that an asportation which is incidental to the commission of extortion or murder will constitute a kidnapping.

California has evolved a somewhat different rule in a line of cases beginning with *People* v. *Daniels* (1969), 71 Cal. 2d 1119, 459 P. 2d 225. *Daniels* involved a series of robberies and rapes committed by the two defendants. In all the incidents there was a brief restraint of the victim and movement not in excess of 30 feet. Nevertheless, the defendants were indicted and convicted on several counts of kidnapping.

The California Supreme Court reversed the defendants' convictions for kidnapping. In so doing, the court overruled *People* v. *Chessman* (1951), 38 Cal. 2d 166, 238 P. 2d 1001, which had held, at page 192, that "[i]t is the fact, not the distance, of forcible removal which constitutes kidnapping in this state." The *Daniels* court then held, at page 1139, that:

134

"***[T]he intent of the Legislature in amending Penal Code section 209 in 1951 was to exclude from its reach not only 'standstill' robberies (*e.g., People* v. *Knowles* [1950], *supra,* 35 Cal. 2d 175), but also those in which the movements of the victim are merely incidental to the commission of the robbery and do not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself."

The *Daniels* rationale was subsequently applied in *People* v. *Timmons* (1971), 4 Cal. 3d 411, 482 P. 2d 648, in which the court vacated the kidnapping conviction of a defendant who had asported his victims five city blocks while robbing them. There the court, at page 414, stated:

"Turning to the second branch of the *Daniels* test, we recognize that for the reasons just stated the movement of the car also increased the likelihood that the victims would be robbed. But that risk is not what we meant in *Daniels***when we spoke of movements which 'substantially increase the risk of harm' beyond that inherent in the underlying crime. Rather, we intended to refer to an increase in the risk that the victim may suffer significant physical injuries over and above those to which a victim of the underlying crime is normally exposed."

California, then, follows a two-branch test. In order to constitute kidnapping, there must be a movement of the victim which is more than merely incidental to another underlying crime, or there must be a movement which substantially increases the risk of harm beyond that inherent in the underlying crime.

Other states have developed other standards. See *State* v. *Dix* (1973), 282 N.C. 490, 193 S.E. 2d 897 (change of "environment" a significant factor); *People* v. *Adams* (1973), 389 Mich. 222, 238, 205 N.W. 2d 415 (six-factor test substantially incorporating New York and California formulations); and *State* v. *Buggs* (1976), 219 Kan. 203, 547 P. 2d 720 (restraint or movement which facilitates or substantially lessens risk of detection is sufficient).

In formulating Ohio guidelines, we first note our disagreement with those states which require movement of the victim to sustain a conviction for kidnapping. The General

Assembly has the power to define criminal offenses in any manner it chooses, so long as it does not violate pertinent constitutional provisions. We believe that prolonged restraint without asportation may be as penologically significant as substantial asportation and, under certain circumstances, will support a conviction for kidnapping as a separate act or animus from that of rape.

Secret confinement, such as in an abandoned building or nontrafficked area, without the showing of any substantial asportation, may, in a given instance, also signify a separate animus and support a conviction for kidnapping apart from the commission of an underlying offense.

The primary issue, however, is whether the restraint or movement of the victim is merely incidental to a separate underlying crime or, instead, whether it has a significance independent of the other offense. In the instant case, the restraint and movement of the victim had no significance apart from facilitating the rape. The detention was brief, the movement was slight, and the victim was released immediately following the commission of the rape. In such circumstances, we cannot say that appellant had a separate animus to commit kidnapping.

We adopt the standard which would require an answer to the further question of whether the victim, by such limited asportation or restraint, was subjected to a substantial increase in the risk of harm separate from that involved in the underlying crime. If such increased risk of harm is found, then the separate offense of kidnapping could well be found. For example, prolonged restraint in a bank vault to facilitate commission of a robbery could constitute kidnapping. In that case, the victim would be placed in substantial danger.

Looking at the facts in this case, we cannot find that the asportation of the victim down the alley to the place of rape presented a substantial increase in the risk of harm separate from that involved in the rape.

Within this pronounced rule we adopt the policy that where murder, the taking of a hostage, or extortion is the underlying crime, a kidnapping in facilitation thereof would generally constitute a separately cognizable offense.

Again, based upon the facts of this case, we hold that ap-

136

pellant's detention and asportation of the victim was incidental to the crime of rape, and therefore demonstrates but a single animus. For that reason, the judgment of the Court of Appeals as to appellant's conviction for kidnapping is reversed.

*Judgment reversed.*

W. BROWN, P. BROWN, SWEENEY and JACKSON, JJ., concur.

CELEBREZZE, C. J., and HERBERT, J., dissent.

JACKSON, J., of the Eighth Appellate District, sitting for LOCHER, J.