[Cite as *State v. Bailey*, 2021-Ohio-3664.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-200386 |
| | | TRIAL NO. B-1906395 |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| VS. | | |
| | : | |
| TYTUS BAILEY, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  October 13, 2021

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Rubenstein & Thurman, LPA, Scott A. Rubenstein, The Law Office of John D. Hill, LLC,* and *John D. Hill,* for Defendant-Appellant.

**BERGERON, Presiding Judge.**

{¶1}    A jury convicted defendant-appellant Tytus Bailey of abduction, robbery, kidnapping, and two counts of rape stemming from a sexual assault at a downtown parking garage.  The trial court sentenced him to 33 years for the rape and kidnapping counts and 8 years for the robbery count, to be served consecutively.  On appeal, Mr. Bailey challenges the effectiveness of his trial counsel along with the imposition of maximum, consecutive sentences as unsupported by the record.  We disagree and affirm the trial court's judgment as it pertains to his first three assignments of error.  Mr. Bailey also maintains that the rape and kidnapping convictions should have merged as allied offenses for sentencing purposes.  In light of the case law and the record, we agree and sustain his fourth assignment of error.

I.

{¶2}    On the night in question, Mr. Bailey approached the victim sitting with two homeless men on a concrete bench near the corner of Second and Walnut streets.  Mr. Bailey assaulted the two men, knocking them out in the process, and threatened to deal a similar fate to the victim unless she performed oral sex on him. He led her away from the homeless encampment where she was living to the Olympic Auto Park garage at the corner of Third and Vine streets (about a block away).  Once there, Mr. Bailey forced her to perform oral sex on him.  Following that assault, Mr. Bailey raped her, struck her in the face repeatedly, and threatened to kill her if she left the garage or infected him with a sexually transmitted disease.  Security cameras captured the two of them entering the garage together just before midnight and leaving separately around 20 minutes later.

2

{¶3}   The next morning, the victim sought out the security guard for the Olympic Auto Park, reporting her sexual assault.  The security guard contacted the Cincinnati police, who located Mr. Bailey the same day.  Mr. Bailey submitted a DNA sample but initially denied having encountered the victim at any point during the previous night.  That statement proved false when his DNA sample matched semen collected during a sexual assault exam.  Police later arrested Mr. Bailey in the course of a suspected shoplifting and charged him with robbery, kidnapping, abduction, and two counts of rape.  After being convicted by a jury, the trial court merged the abduction offense with the kidnapping for sentencing purposes and imposed maximum consecutive sentences on the other four counts.

{¶4}   On appeal, Mr. Bailey presents four assignments of error, asserting: (1) his trial counsel's ineffectiveness, (2) error in imposing consecutive sentences, (3) a lack of record support for imposing maximum sentences on each count, and (4) error in failing to merge the kidnapping and rape convictions during sentencing.  For ease of discussion, we address the last assignment of error first.

II.

{¶5}   The Double Jeopardy Clauses of both the United States and Ohio Constitutions protect individuals from being punished twice for the same offense. *State v. Merz*, 1st Dist. Hamilton No. C-200152, 2021-Ohio-2093, ¶ 6, citing the Fifth Amendment to the United States Constitution ("No person shall * * * be subject for the same offence to be twice put in jeopardy of life or limb * * *.") and the Ohio Constitution, Article I, Section 10 ("No person shall be twice put in jeopardy for the same offense.").  To avoid subjecting Mr. Bailey to multiple penalties for the same offense under different statutes, we assume statutory provisions outlawing the same

3

offense do not authorize cumulative punishments unless the General Assembly dictates otherwise. *See State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 11 (" '[W]here two statutory provisions proscribe the 'same offense,' they are construed not to authorize cumulative punishments *in the absence of a clear indication of contrary legislative intent.*' ") (Emphasis sic.), quoting *Whalen v. United States*, 445 U.S. 684, 691–692, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). The General Assembly codified this double jeopardy protection in R.C. 2941.25, obliging trial courts "to merge allied offenses when they are of similar import, were committed together, and were motivated by the same animus." *Merz* at ¶ 6. Thus, we must affirm the trial court's decision not to merge Mr. Bailey's rape and kidnapping offenses if any of the following is true: "(1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." *Ruff* at ¶ 25. We may end our analysis "upon finding that any one of the three applies." *State v. Lee*, 1st Dist. Hamilton No. C-190149, 2020-Ohio-944, ¶ 6.

{¶6} Before considering the *Ruff* approach to merger in general, we note that earlier case law is "still relevant to determining whether rape and kidnapping convictions merge" under the third *Ruff* prong addressing animus. *State v. Grate*, 164 Ohio St.3d 9, 2020-Ohio-5584, 172 N.E.3d 8, ¶ 108. In *State v. Logan*, the Supreme Court established guidelines for evaluating whether kidnapping and rape are committed with a separate animus. *State v. Logan*, 60 Ohio St.2d 126, 134-135, 397 N.E.2d 1345 (1979). If the restraint or movement of the victim is merely incidental to the underlying rape, then no separate animus exists; however, if

4

prolonged restraint, secretive confinement, or substantial movement occurs, then a separate animus exists to support separate convictions. *Id.* at the syllabus; *see Merz* at ¶ 11 ("In simplistic terms, the *Logan* guidelines examine the significance of the restraint or movement of the victim: whether it was 'merely incidental' to the other crime or whether it was substantial enough (either in execution or in increased risk) that it attains independent significance."). As used in the merger statute, "animus" means "purpose" or "immediate motive" and "must be inferred from the surrounding circumstances." *Logan* at 131.

{¶7} In his fourth assignment of error, Mr. Bailey insists that the trial court should have merged the kidnapping and rape charges as allied offenses because the state relied on the rape offense to prove an essential element of the kidnapping offense. Mr. Bailey failed to preserve this issue for appeal at the trial level, so we review it for plain error. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3 ("An accused's failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error * * *."). "For this court to reverse on plain error, we must find that (1) there was an error, (2) the error was plain, i.e., an obvious defect in the trial court proceedings, and (3) the error affected substantial rights, i.e., it affected the outcome * * * ." *State v. Burgett*, 2019-Ohio-5348, 139 N.E.3d 940, ¶ 30 (1st Dist.). A trial court's failure to merge allied offenses "necessarily affects a substantial right" that constitutes plain error. *Merz* at ¶ 7 ("Because the requirement to merge allied offenses is 'mandatory, not discretionary,' *see State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 26, failure to do so necessarily affects a substantial right."). Mr. Bailey bears the burden of showing "a reasonable probability that the convictions are for allied offenses of

similar import committed with the same conduct and without a separate animus[.]" *Rogers* at ¶ 3.

{¶8}  Applying the *Ruff* and *Logan* framework to Mr. Bailey's appeal, we first explore whether the allied offenses here are of dissimilar import—and more specifically, whether offenses are of dissimilar import when the harm caused by one serves as an element of the other.  Offenses are of dissimilar import when (1) the offenses involve separate victims, or (2) the harm from each offense is separate and identifiable.  *Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892 at ¶ 26 ("We therefore hold that two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.").  In this case we have only one victim, so we need only consider whether the harm from the rape is separate and identifiable from the harm constituting the element of kidnapping.  In this respect, Mr. Bailey highlights the state's reliance on the rape itself as an essential element of the kidnapping offense.

{¶9}  The state convicted Mr. Bailey under R.C. 2905.01(A)(2), which reads: "No person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o facilitate the commission of any felony or flight thereafter * * * ."  The last element—the commission of a felony—was established by Mr. Bailey's rape of the victim.  Put differently, but for committing the rape, Mr. Bailey could not have been convicted of the kidnapping under this subsection (nor does the state now contend to the contrary).  And where, as here, an element of the kidnapping offense exists solely due to the felony rape of the victim, the harms are not of dissimilar import or separate

and identifiable. *State v. Ruff,* 1st Dist. Hamilton No. C-120533, 2015-Ohio-3367, ¶ 18 ("[W]here the conduct that constitutes one offense causes a harm that is not separate and identifiable from the harm caused by the aggravating element of another offense, then the offenses are of a similar import.").

{¶10} Having answered the first *Ruff* question in the negative, we turn to the second and third: whether the offenses were committed separately or with a separate animus. Neither side makes an argument that the offenses proceeded separately. Mr. Bailey indicated from the outset that he intended to sexually assault the victim, and the kidnapping occurred as part of that assault. As a result, we are left to consider whether a separate animus or motivation existed between the rape and the kidnapping. In other words, was the kidnapping incidental to the rape or was it substantial enough to attain independent significance? No bright-line answer governs this question in all circumstances. The Supreme Court has acknowledged that "implicit within every forcible rape * * * is a kidnapping." *Logan,* 60 Ohio St.2d at 130, 397 N.E.2d 1345. The merger statute directs us to take into account the defendant's conduct when deciding whether to merge allied offenses, which yields an often fact-driven inquiry. *Ruff* at ¶ 26 ("At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct."); *see State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 52 ("[T]his analysis * * * may result in varying results for the same set of offenses in different cases. But different results are permissible, given that the statute instructs courts to examine a defendant's conduct—an inherently subjective determination.").

{¶11} Turning to Mr. Bailey's conduct, the state contends that he committed the kidnapping with a deliberate purpose and separate animus from the rape. Mr. Bailey counters by arguing that his asportation of the victim to the parking garage only rose to the level of kidnapping by virtue of committing the rapes, (i.e., it was "merely incidental"), and no separate animus existed. On these facts, which closely parallel those of the *Logan* case itself, we agree with Mr. Bailey. In *Logan,* the defendant forced the victim to walk down the alley, around a corner, and down a flight of stairs, where he raped and then immediately released her. *Logan* at 127. The court decided the conduct in *Logan* represented a single animus with no significance apart from facilitating the rape, and that the movement did not present a substantial increase in the risk of harm separate from that involved in the rape. *Id.* at 135-136. In circumstances where "[t]he detention was brief, the movement was slight, and the victim was released immediately following the commission of the rape[,]" the court held no separate animus to commit kidnapping existed. *Id.* at 135.

{¶12} Likewise, Mr. Bailey's behavior confirms that his movement was merely incidental to the rape. Mr. Bailey told the victim he wanted to use her for sexual gratification, and he moved her to expedite that assault. *Logan* at 132 ("[W]here an individual's immediate motive is to engage in sexual intercourse * * * the perpetrator may be convicted of either rape or kidnapping, but not both."). Based on the victim's testimony, after Mr. Bailey attacked her friends, he then walked her to a garage "not too far across the street." While the exact distance is not known, it was roughly a city block and likely comparable to the movement in *Logan.* Once there, Mr. Bailey assaulted her "just into the entrance [of the parking garage] and to the left." In urging us to characterize this action as a secret confinement

constituting separate animus, the state relies mainly on cases in which the defendant moved the victim from a public place into a private building. *See, e.g., State v. Martin,* 1st Dist. Hamilton No. C-150054, 2016-Ohio-802, ¶ 29-32 (holding that rape and kidnapping were not allied offenses of similar import requiring merger where defendant removed the child-victim from a public place and took her to a closed apartment). That is a markedly different factual situation from taking the victim just inside the entrance of an open-air, public parking garage in downtown Cincinnati, even at night, with enough security cameras to help police locate Mr. Bailey the following day. Indeed, this setting seems arguably less secluded than the remote stairwell in the alley in *Logan.* And although Mr. Bailey threatened the victim here not to leave the parking garage, he took no action to keep her confined there after the assault. In other words, he did not trap her in a room or other confined space.

{¶13} Because the kidnapping was an allied offense of similar import and was not committed separately or with a separate animus, the trial court erred in not merging the convictions for sentencing purposes. Accordingly, we sustain Mr. Bailey's fourth assignment of error.

### III.

{¶14} Returning to his first assignment of error, Mr. Bailey claims a denial of his constitutionally-protected right to effective counsel both during trial and sentencing. As to the sentencing phase, Mr. Bailey points to counsel's failure to address whether the kidnapping and rape charges should have merged at sentencing. Our discussion above sustaining his fourth assignment of error renders that issue moot. To prevail on his claim of ineffective assistance of counsel during trial, Mr. Bailey must show that "counsel's performance was deficient and that counsel's

deficient performance prejudiced the defense so as to deprive the defendant of a fair trial." *State v. Worley,* Slip Opinion No. 2021-Ohio-2207, ¶ 95, citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We will generally presume that an attorney is competent, and the defendant bears the burden to show ineffective assistance of counsel. *State v. Walker*, 1st Dist. Hamilton No. C-190193, 2020-Ohio-1581, ¶ 64. "Conclusory statements that the outcome would have been different, without more, are not enough to carry [Mr. Bailey's] burden on the issue of prejudice." *State v. Williams*, 1st Dist. Hamilton No. C-180588, 2020-Ohio-1368, ¶ 22, citing *State v. Montgomery,* 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E. 3d 180, ¶ 95 ("[Defendant]'s argument is conclusory, and he has not even attempted to show prejudice under *Strickland.*").

{¶15} Regarding trial deficiencies, Mr. Bailey first complains that his counsel allowed the case to be heard by a jury. But he then concedes—and the trial transcript confirms—that it was *his* decision to exercise his constitutional right to a jury. In any case, Mr. Bailey acknowledges that he is not raising this issue for consideration by our court, but rather he intends to pursue it in a postconviction petition. Without any legal or factual substantiation of this charge, we have no occasion to ponder it further.

{¶16} Next, Mr. Bailey asserts that poor advice from trial counsel prevented him from testifying in his own defense. This strategy decision allegedly prejudiced him because only he could explain what happened on the night in question and why he spun a series of lies as the walls closed in on him. According to Mr. Bailey, he and the victim engaged in a consensual sex-for-drugs transaction. Through cross-examination, Mr. Bailey's counsel explored that theory by insinuating that the victim

10

prostituted herself in exchange for drugs. Relying on cross-examination to undermine witness testimony represents a legitimate trial strategy and does not necessarily constitute ineffective assistance of counsel. *State v. Hunter,* 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 66. Even if it did, Mr. Bailey never explains "what the alternative strategy would have entailed or how that strategy would have impacted the outcome of his case." *See Williams*, 1st Dist. Hamilton No. C-180588, 2020-Ohio-1368, at ¶ 22, citing *State v. Sanford*, 8th Dist. Cuyahoga No. 84478, 2005-Ohio-1009, ¶ 15 (finding no prejudice when defendant failed to demonstrate "how the outcome of the trial would have been different had counsel employed another strategy[.]"). The jury heard Mr. Bailey's narrative and chose not to believe him. Mr. Bailey's speculation that changing the messenger would have altered the outcome falls short on this record. Advising Mr. Bailey not to testify was not objectively unreasonable nor did it prejudice the outcome of his case based on the record at hand. Accordingly, we overrule this assignment of error.

{¶17} In his second assignment of error, Mr. Bailey faults the statutory findings made by the trial court before imposing consecutive sentences as not supported by clear and convincing evidence. Specifically, he challenges the trial court's findings pursuant to R.C. 2929.14(C)(4)(b) and (c)—that the harm he committed was so great no single prison term would adequately reflect the seriousness of his conduct, and that his history of criminal conduct demonstrated a need to protect the public from commission of future offenses. Regarding harm, Mr. Bailey again argues the kidnapping and rape were allied offenses and the sentences for those offenses should have been imposed concurrently, if not merged, because they were part of a singular course of conduct. We addressed this in paragraphs 5-13

above and our granting relief on his fourth assignment of error essentially moots this point. As to criminal history, Mr. Bailey excuses his record as youthful dalliances not warranting consecutive sentences. The trial court found otherwise, pointing to Mr. Bailey's lack of remorse, the court's belief that he would victimize people again based on his prior criminal history, and the fact that Mr. Bailey brutalized defenseless homeless people. And "[a]s long as we can discern that the trial court engaged in the correct analysis and the record contains evidence to support the findings, consecutive sentences will be upheld." *State v. Marshall,* 1st Dist. Hamilton Nos. C-190748 and C-190758, 2021-Ohio-816, ¶ 49. Because the trial court's findings are supported by the record, we overrule this assignment of error.

{¶18} Finally, Mr. Bailey challenges his maximum sentences as unsupported by the record and violative of the Eighth Amendment's prohibition against cruel and unusual punishment. Trial courts have discretion to impose prison sentences within the statutory range for the crime committed and any sentence imposed under a valid statue generally does not trigger cruel and unusual concerns. *State v. Dieterle*, 1st Dist. Hamilton No. C-070796, 2009-Ohio-1888, ¶ 42-43. The Eighth Amendment only prohibits sentences that are "grossly disproportionate" to the crime, meaning the penalty in relation to the circumstances of the offense "would be considered shocking to any reasonable person" or the penalty "shock[s] the sense of justice of the community." *State v. Hairston,* 118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073, ¶ 13-14. That is not the situation here and the individual sentences fall within their respective statutory ranges. To the extent Mr. Bailey believes the consecutive nature of the sentences transforms them into cruel and unusual punishment, Supreme Court precedent forecloses that path. *See id.* at ¶ 20 ("Where

none of the individual sentences imposed on an offender are grossly disproportionate to their respective offenses, an aggregate prison term resulting from consecutive imposition of those sentences does not constitute cruel and unusual punishment.").

{¶19} Mr. Bailey's final position—that the maximum sentences are unsupported by the record—is similarly misguided. He asserts that R.C. 2929.12(B) implicitly directs the trial court to conduct a "worst-form of the offense" analysis before imposing maximum sentences. But the statute does not prescribe that— rather, it instructs courts to consider numerous factors "as indicating that the offender's conduct is more serious than conduct normally constituting the offense[.]" R.C. 2929.12(B). We see no obligation on the part of the trial court to find Mr. Bailey's conduct amounted to the worst type (however defined) of robbery, rape, or kidnapping before imposing the maximum sentence on each charge. Regardless, we can only modify a sentence if it is contrary to law or the record does not support the trial court's finding under certain enumerated statutes. *See* R.C. 2953.08(G)(2). Notably, R.C. 2929.12 is not one of statutes listed, and R.C. 2953.08(G)(2) provides no "basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record[.]" *State v. Jones,* 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 39, 31 ("* * * R.C. 2953.08(G)(2)(a) clearly does not provide a basis for an appellate court to modify or vacate a sentence if it concludes that the record does not support the sentence under R.C. 2929.11 and 2929.12, because * * * [they] are not among the statutes listed in the provision."). Considering that the sentences comported with the applicable legal standards, and

13

we lack authority to modify or vacate the sentences as unsupported by the record, we overrule Mr. Bailey's third assignment of error.

\*　　　\*　　　\*

{¶20}  In light of the foregoing analysis, we overrule Mr. Bailey's first three assignments of error.  We sustain his fourth assignment of error and remand the cause for a new sentencing hearing so the state may choose which allied offense to pursue.

Judgment affirmed in part, reversed in part, and cause remanded.

**WINKLER** and **BOCK, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion