[Cite as *State v. Pugh*, 2022-Ohio-3038.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,            :

                                      No. 111099

    v.                             :

CAMERON PUGH,                           :

    Defendant-Appellant.           :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** September 1, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-650091-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Fallon Kilbane McNally, Assistant Prosecuting Attorney, *for appellee.*

Flowers & Grube, Louis E. Grube, and Melissa A. Ghrist, *for appellant.*

SEAN C. GALLAGHER, A.J.:

{¶ 1} Defendant-appellant Cameron Pugh appeals from the judgment of conviction and sentence that was imposed in this case. Upon review, we affirm. However, we remand the matter with instructions for the trial court to issue a nunc

pro tunc entry to correct the November 12, 2021 judgment entry to reflect Pugh entered a plea of guilty to Count 1 as amended to "burglary" under R.C. 2911.12(A)(2) with a forfeiture specification and to delete the reference to "aggravated burglary" under R.C. 2911.11(A)(2) as to that count.

## I.    Background

{¶ 2}    On May 12, 2020, Pugh and three codefendants were charged under a multicount indictment.  Pugh was charged under the first five counts.[1]  Counts 2 and 3 were attempted-murder counts that would later be nolled.  Counts 1, 4, and 5 charged Pugh with the following offenses:

> Count 1:  aggravated burglary in violation of R.C. 2911.11(A)(2), a felony of the first degree, with one- and three-year firearm specifications and a forfeiture of a weapon specification.  (Victim one and victim two named.)

> Count 4:  felonious assault in violation of R.C. 2903.11(A)(2), a felony of the second degree, with one- and three-year firearm specifications and a forfeiture of a weapon specification.  (Victim one named.)

> Count 5:  felonious assault in violation of R.C. 2903.11(A)(2), a felony of the second degree, with one- and three-year firearm specifications. (Victim two named.)

With respect to those three counts, the indictment generally alleged that on or about March 29, 2020, Pugh and his codefendants trespassed into a structure occupied by two named persons (referred to herein as "K.M." and "P.G.") with the purpose to commit attempted murder and/or felonious assault and that the offender

---

[1] Pugh was not charged under Counts 6 and 7 of the indictment.

did knowingly cause or attempt to cause physical harm to K.M. and P.G. by means of a handgun.

{¶ 3} The case eventually proceeded to a jury trial that commenced on November 8, 2021, on the charges against Pugh. Prior to the start of trial, the state placed a plea offer on the record. At that time, defense counsel indicated that Pugh was rejecting the plea offer.

{¶ 4} The state called seven witnesses to testify. According to the testimony provided, Pugh and P.G. had dated in 2019 and their relationship eventually ended. Pugh stayed at P.G.'s apartment for a period of time, but he eventually moved out. He did not return a key fob to the apartment and informed P.G. he lost it. P.G. contacted Pugh multiple times about getting items he had left behind. On the night of March 29, 2020, P.G. was sitting in her apartment with K.M., whom she was dating at that time. Pugh was texting P.G. and asking about her dating life and asking to come get his things. The two had an argument, during which Pugh stated "My TV, bed, dresser, all that coming with me this week" and "I have to come and get that shit." Pugh made other remarks, and P.G. told Pugh not to come to her apartment. Pugh also called P.G. at one point during the argument and he knew P.G. was in her bathroom. P.G. thought something was wrong, and she kept looking out the peephole to her apartment door. Her television began cutting off, and soon after, P.G. and K.M. heard the door unlock. P.G. testified that Pugh entered the apartment, he had a firearm with a red laser that bounced around the room, they had a short exchange of words, and then Pugh began shooting. Another male who

was with Pugh also was shooting. K.M., who had a concealed-carry permit, had a gun and returned fire. K.M. was injured with a graze wound during the shooting exchange. After the assailants fled the scene, police were called. Pugh was one of the suspects in the case. Video surveillance, cell-phone records, and other evidence were introduced.

{¶ 5} On November 10, 2021, after the state rested its case in chief and the trial court overruled a Crim.R. 29 motion for acquittal, the state and Pugh reached a plea agreement in the midst of trial. The state placed the plea offer on the record, stating as follows:

> Your Honor, it's the State's understanding that the Defendant will withdraw his previously entered not guilty [plea] and enter a plea of guilty to an amended indictment of Count 1, [as amended to] burglary, a felony of the second degree, pursuant to 2911.12(A)(2). This would include forfeiture of a weapon pursuant to 2941.1417(A). All firearm specifications on this count would be nolled.
>
> Counts 2 and 3 would be nolled in their entirety. Count 4 is felonious assault, a felony of the second degree, pursuant to 2903.11(A)(2). This would include a three-year firearm specification pursuant to 2941.145(A) * * * [and deleting the one-year firearm specification] * * *. And this would include forfeiture of a weapon pursuant to 2941.1417(A).
>
> Count 5 is felonious assault, felony of the second degree, pursuant to 2903.11(A)(2). All firearm specifications on this would be nolled.

{¶ 6} The state clarified the plea agreement for the court, including that Pugh would be pleading guilty to three second-degree felonies and that there was a single three-year firearm specification, which was associated with Count 4. It was

also understood by Pugh that there would be no contact with the victims and he would forfeit whatever interest he had in the specified handgun.

{¶ 7} The trial court advised Pugh of his constitutional rights, of the maximum sentence that could be imposed on each second-degree felony count, of the mandatory period of postrelease control, and of the Reagan Tokes Law. Pugh retracted his former plea of not guilty and entered a plea of guilty to amended Counts 1, 4, and 5, consistent with the plea agreement. The remaining counts were nolled.

{¶ 8} Relevant hereto, prior to entering his guilty plea on Count 1, the trial court informed Pugh of the amended nature of the charge and the penalty that could be imposed, stating as follows:

> THE COURT: Okay. You'll be pleading guilty in Count 1 to burglary, amended to get rid of the aggravated part, making it a second-degree felony. Count 1 is punishable by a two- to eight-year prison term, and a fine of up to $15,000, if you plead guilty to that. Do you understand that?
>
> THE DEFENDANT: Yes, sir.

{¶ 9} The trial court explained to Pugh that he would be sentenced indefinitely under the Reagan Tokes Law. Pugh proceeded to enter a guilty plea on Count 1 as amended to "burglary" as reflected on the record as follows:

> THE COURT: Okay. Count 1 has been amended to burglary, a second-degree felony, the one-year firearm specification has been deleted, how do you plead to burglary, a second-degree felony * * *?[2]
>
> THE DEFENDANT: Guilty, sir.

---

[2] The trial court mistakenly referenced a three-year firearm specification, but the mistake was corrected on the record by the trial court, which made note "that there's no spec on Count 1."

**{¶ 10}** Although the record clearly shows that Pugh pled to Count 1 as amended to burglary, a second-degree felony, the record reflects that the judgment entry filed November 12, 2021, contains a clerical error in that it states Pugh entered a plea of guilty to "aggravated burglary" under R.C. 2911.11(A)(2), rather than burglary under R.C. 2911.12(A)(2). The judgment entry correctly denotes the offense as an "F2 with forfeiture specification(s) (2941.1417) as amended in count(s) 1 of the indictment." The inclusion of the word "aggravated" was no more than a clerical error that can be corrected by a nunc pro tunc entry to reflect what actually occurred on the record. *See* Crim.R. 36. We remand the case with instructions for the trial court to issue a nunc pro tunc judgment entry to correct this error.

**{¶ 11}** The trial court proceeded with a sentencing hearing on the same day the plea was entered. The trial court properly restated the amended charges to which Pugh pled guilty:

> Count 1 amended to burglary, a second-degree felony. He also pled guilty to felonious assault in Count 4 and 5. Count 4 was amended to delete the one-year spec. Count 5 was amended to delete both specs. He pled guilty to Count 4, second degree felony with three-year firearm specification. He also agreed to forfeit his interest in the Taurus nine-millimeter.

**{¶ 12}** Defense counsel presented mitigating factors to the court, and Pugh's parents addressed the court. Pugh also addressed the court, apologized, and stated he went into P.G.'s apartment to collect items that he claimed were his. The trial court sentenced Pugh as follows:

> Therefore, on Count 1, the aggravated burglary, I'm going to sentence you to four years at Lorain Correctional Institute [sic].

On Count 5, the count of -- the other felonious assault count, I'm going to sentence you to six years at Lorain Correctional Institute [sic].

On Count 4 I'm going to sentence you to three years on the firearm specification, to run prior to and consecutive with the six year minimum term on the base count, and a nine year maximum term on the base count.

You'll be given credit for time served.

You'll be ordered to pay the court costs.

You'll be ordered to have no contact with the victim[s] * * *.

{¶ 13} No objection was made to the trial court's reference to Count 1 as "aggravated" burglary, which was how the offense was originally charged in the indictment. The transcript reflects the trial court was aware at the time of sentencing that Pugh had pled earlier that day to an amended charge of burglary, a felony of the second degree. The court stated this on the record. Further, the sentencing entry properly reflects the sentence that was imposed on "Count 1: F2, 4 year(s)" and reflects the sentence that was imposed on the other counts. The trial court provided the advisements under the Reagan Tokes Law.

{¶ 14} The trial court also imposed postrelease control and informed Pugh he would "face [a] mandatory minimum post release control of 18 months up to a maximum of three years," which is applicable to a second-degree felony. Additionally, the court ordered the forfeiture of a weapon and ordered Pugh to have no contact with the victims.

{¶ 15} Pugh timely filed this appeal.

## II.     Law and Analysis

{¶ 16} Pugh raises three assignments of error.  He claims the trial court committed plain error by (1) failing to merge all of his convictions at sentencing, (2) convicting and sentencing him for "aggravated burglary" instead of burglary, and (3) sentencing him pursuant to the Reagan Tokes Law.  Because all three assignments of error assert plain error, we first address the limits of our review for plain error.

### A. Plain-Error Standard

{¶ 17} Generally, "[i]f the defendant failed to raise an error affecting substantial rights at trial, an appellate court reviews the error under the plain error standard in Crim.R. 52(B)." *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 14.  "A 'plain error' is obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse affect on the character and public confidence in judicial proceedings." *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 209, 436 N.E.2d 1001 (1982).

{¶ 18} Crim.R. 52 affords appellate courts "limited power" to correct plain errors that occurred during the trial court proceeding.  *See Perry* at ¶ 9.  Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."  Under the plain-error standard, "the defendant bears the burden of 'showing that but for a plain or obvious error, the outcome of the proceeding would have been otherwise, and reversal must be necessary to correct a manifest miscarriage of justice.'" *State v. West*, Slip Opinion No. 2022-Ohio-1556, ¶ 22, quoting *State v. Quarterman*, 140

Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16. "An appellate court has discretion to notice plain error and therefore 'is not required to correct it.'" *Id.*, citing *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 23.

{¶ 19} Under the plain error rule, "the *defendant* bears the burden of demonstrating that a plain error affected his substantial rights." (Emphasis sic.) *Perry* at ¶ 14, citing *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). To have affected substantial rights, the error must have had a prejudicial effect on the outcome of the trial. *See Rogers* at ¶ 22, citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

{¶ 20} Likewise, in the context of allied offenses of similar import, the Supreme Court of Ohio has held

> [a]n accused's failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error, and a forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice.

*Rogers* at ¶ 3. "The law require[s] [the defendant] to demonstrate a reasonable probability that his convictions constituted allied offenses of similar import." *Id.* at ¶ 29. "[A]bsent the accused's showing that there was a reasonable probability that the convictions are in fact for allied offenses of similar import committed with the same conduct and without a separate animus, 'the accused cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of

sentencing was plain error.'" *State v. Williams*, 148 Ohio St.3d 403, 2016-Ohio-7658, 71 N.E.3d 234, ¶ 25, quoting *Rogers* at ¶ 3.[3]

{¶ 21} The defendant's "burden of proving entitlement to relief for plain error 'should not be too easy.'" *Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, at ¶ 22, quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 81-83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004) (construing Fed.R.Crim.P. 52(b), the federal analog to Crim.R. 52(B)). Even if the defendant's burden is satisfied, the Supreme Court of Ohio has admonished appellate courts to notice plain error "with the utmost caution, under exceptional circumstances and *only* to prevent a manifest miscarriage of justice." (Emphasis sic; internal quotations omitted.) *Rogers* at ¶ 23, quoting *Barnes* at 27, in turn quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. Therefore, an appellate court may not simply substitute its judgment for that of a trial court under the guise of plain error, which affords limited power. An appellate court must be careful not to engage in an unwarranted expansion of Crim.R. 52(B). *See Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, at ¶ 9, 20. Even when claims of serious error are made,

---

[3] We note that the Supreme Court of Ohio has accepted review in *State v. Bailey*, 1st Dist. Hamilton No. C-200386, 2021-Ohio-3664, *appeal accepted,* 2022-Ohio-461, a case in which the Tenth District found a trial court committed error by failing to merge kidnapping and rape convictions as allied offenses of similar import. On appeal to the Supreme Court, the state argues in part that the appellate court did not properly apply the plain-error rule and within the proposition of law presented, the state raises the issue of "[w]hen a reviewing court reverses, not for any apparent 'manifest injustice — but because it subjectively disagrees with the trial court's determination — it is simply substituting its judgment for that of the trial judge. Under such circumstances, the reviewing court's reversal is itself properly reversed." Until and unless determined otherwise, we shall adhere to established Supreme Court case law in conducting our plain-error review.

when no objection was raised at trial, expanding Crim.R. 52(B) "would skew the Rule's careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed." (Internal quotations omitted.) *State v. Hill*, 92 Ohio St.3d 191, 199, 749 N.E.2d 274 (2001), quoting *Johnson v. United States*, 520 U.S. 461, 466, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (further citations omitted.) "[O]ur holdings should foster rather than thwart judicial economy by providing incentives * * * for the defendant to raise all errors in the trial court—where, in many cases, such errors can be easily corrected." *Perry* at ¶ 23.

**B. Plain-Error Challenges**

{¶ 22} Pugh raises three plain-error challenges. First, Pugh contends that the trial court committed plain error by failing to merge all of his convictions before sentencing. Although the parties reached a plea agreement in this case, we cannot conclude from the record before us that Pugh waived the protections afforded by R.C. 2941.25. Nevertheless, because Pugh did not seek the merger of his convictions as allied offenses of similar import in the trial court, he has forfeited all but plain error. *Rogers* at ¶ 21.

{¶ 23} When considering whether two offenses are allied offenses of similar import, as a practical matter, courts must consider "[t]he conduct, the animus, and the import." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31.[4]

---

[4] "[A]nimus is often difficult to prove directly, but must be inferred from the surrounding circumstances." *State v. Logan*, 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979).

Because a plain-error challenge is being raised, Pugh is required to "demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus; absent that showing, the accused cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error." *Rogers* at ¶ 3.

{¶ 24} Pugh was convicted of a burglary offense under R.C. 2911.12(A)(2) and two felonious-assault offenses under R.C. 2903.11(A)(2). The burglary was complete when Pugh entered P.G.'s apartment with the intent to commit any criminal offense in the habitation. *See State v. Jackson*, 149 Ohio St.3d 55, 2016-Ohio-5488, 73 N.E.3d 414, ¶ 129 (finding burglary was complete when defendant entered victim's residence with the intent to commit murder, theft, or kidnapping); *State v. Ongert*, 8th Dist. Cuyahoga No. 103208, 2016-Ohio-1543, ¶ 5 ("it is the intent to commit any criminal offense while trespassing that constitutes the commission of the burglary crime" and "[n]o criminal offense actually needs to be committed" after trespassing in the home).[5]

---

[5] We note that the Supreme Court of Ohio has accepted a certified conflict in *State v. Ramunas*, 5th Dist. Delaware No. 20 CAA 12 0054, 2021-Ohio-3191, *appeal accepted,* 165 Ohio St.3d 1531, 2022-Ohio-280, 180 N.E.3d 1155, on the following issue: "If an individual trespasses in an occupied structure when any person other than an accomplice of the offender is present or likely to be present with the sole purpose of committing a theft offense therein, are the burglary and the resulting theft offense allied offenses of similar import within the meaning of R.C. 2941.25?" (The conflict case is from the Fourth District.) This is not the same issue before us.

{¶ 25} Testimony was presented that Pugh completed the burglary upon entry and then separately committed the felonious assaults while remaining inside. Pugh had exchanged text messages with P.G., and they had an argument. P.G. felt something was going on, became panicked, and was looking through the peephole of her door. After Pugh trespassed into the apartment with a firearm, he saw K.M. with P.G. and had a short exchange of words with P.G. before he began shooting. Once P.G. entered the apartment with a purpose to commit a criminal offense, he had the choice to leave without committing the second offense. *See State v. Penn*, 9th Dist. Summit No. 29296, 2020-Ohio-3158, ¶ 54. Thus, the felonious assault offenses did not arise from the same conduct and were dissimilar in import and committed with a separate animus from the burglary offense. Also, the harm caused between the burglary and the two felonious assault offenses was distinct. K.M. had her home invaded, a form of harm distinct from being shot at. The record also reflects the two felonious assault offenses were committed against two different victims. "[O]ffenses are not offenses of similar import if the offender's conduct constitutes offenses against different victims or if the harm that results from each offense is separate and identifiable." *Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, at ¶ 4, citing *Ruff* at ¶ 23.

{¶ 26} Because Pugh has failed to demonstrate a reasonable probability that he has, in fact, been convicted of allied offenses of similar import committed with the same conduct and without a separate animus, he has not met his burden of demonstrating a plain error that affected his substantial rights. Further, this is not

a case of exceptional circumstances in which a manifest miscarriage of justice has occurred. Therefore, the first assignment of error is overruled.

{¶ 27} Second, Pugh claims the trial court committed plain error by convicting and sentencing him for aggravated burglary. However, the record clearly reflects the trial court convicted and sentenced Pugh for the three second-degree felony offenses to which he pled guilty. The record shows that pursuant to the plea agreement, Pugh entered a plea of guilty to three second-degree felonies. The trial court notified Pugh that he would be pleading "guilty in Count One to burglary, amended to get rid of the aggravated part, making it a second-degree felony * * *," which was "[p]unishable by a two-to-eight-year prison term and a fine of up to $15,000." At the sentencing hearing, which was conducted later the same afternoon, the trial court restated the amended charges to which Pugh pled guilty, including "Count 1 amended to burglary, a second-degree felony" with the forfeiture of the weapon. Although the trial court referred to the charge as originally indicted of "aggravated burglary" when imposing sentence, the trial court recognized that the four-year sentence imposed was for an "F2" charge, and the court imposed postrelease control of "18 months up to a maximum of three years," which is applicable to a second-degree felony. The sentencing entry also reflects the sentence that was imposed on "Count 1: F2, 4 year(s)." Thus, Pugh was properly sentenced on the burglary charge to which he pled and no manifest miscarriage of justice occurred. Insofar as the sentencing error has a clerical error in it that stated Pugh

entered a plea of guilty to "aggravated burglary" rather than burglary, as discussed previously, this may be corrected nunc pro tunc by the trial court.

{¶ 28} At best, the sentencing might be described as a little sloppy. However, Pugh has not demonstrated a plain error that affected his substantial rights. Moreover, this mistake easily could have been corrected if it were raised in the trial court and does not warrant us to take notice of plain error, which would thwart judicial economy in this instance. The second assignment of error is overruled.

{¶ 29} Third, Pugh claims the trial court committed plain error by sentencing him pursuant to the Reagan Tokes Law, which he argues violates the constitutional right to due process. No constitutional challenge to the Reagan Tokes Law or objection to the indefinite sentence that was imposed was raised before the trial court.

{¶ 30} The Supreme Court of Ohio has recognized the familiar principle that "'a constitutional right, or a right of any other sort, may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." (Internal quotations omitted.) *West*, Slip Opinion No. 2022-Ohio-1556, at ¶ 22, quoting *Olano*, 507 U.S. at 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), in turn quoting *Yakus v. United States*, 321 U.S. 414, 444, 64 S.Ct. 660, 88 L.Ed. 834 (1944). Accordingly, "the question of the constitutionality of a statute must generally be raised at the first opportunity and, in a criminal prosecution, this means in the trial court." *State v. Awan*, 22 Ohio St.3d 120, 122, 489 N.E.2d 277 (1986), citing *State v. Woodards*, 6 Ohio St.2d 14, 21, 215

N.E.2d 568 (1966). Nevertheless, we have the discretion to review a forfeited constitutional challenge for plain error. *State v. Buttery*, 162 Ohio St.3d 10, 2020-Ohio-2998, 164 N.E.3d 294, ¶ 7, citing *Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, at ¶ 16.

{¶ 31} Pugh claims the Reagan Tokes Law violates his constitutional due process rights. However, this district's en banc holding in *State v. Delvallie*, 2022-Ohio-470, 185 N.E.3d 536 (8th Dist.), rejected the challenges Pugh advances. Accordingly, Pugh fails to demonstrate a plain error that affected his substantial rights. Accordingly, we overrule the third assignment of error.

{¶ 32} We are not persuaded by any other argument raised.

{¶ 33} Judgment affirmed and case remanded.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for further proceedings consistent with this opinion.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, ADMINISTRATIVE JUDGE

LISA B. FORBES, J., and
EILEEN T. GALLAGHER, J., CONCUR

N.B.  Judge Lisa B. Forbes is constrained to apply *Delvallie*.  For a full explanation, *see State v. Delvallie*, 2022-Ohio-470, 185 N.E.3d 5336 (8th Dist.).

Judge Eileen T. Gallagher joined the dissent by Judge Lisa B. Forbes in *Delvallie* and would have found that R.C. 2967.271(C) and (D) of the Reagan Tokes Law are unconstitutional.